# HANOVER FIRE INS. CO. *et al.* v. EISMAN *et al.*

No. 6076.   Opinion Filed January 9, 1915.

Rehearing Denied February 16, 1915.

(146 Pac. 214.)

1.   INSURANCE—Inventory—Sufficiency. Where in an inventory taken under the terms of a policy of insurance providing that, "The assured will take an itemized inventory of stock hereby insured. * * * it appears that approximately one-ninth of a stock of merchandise covered by the policy was not invoiced in a proper or approved manner, in that some of the articles were set down in lots or groups, and not by items, but that the remainder of such stock was described therein item by item, with the value set opposite, held, that such deficiency did not pervade the whole inventory or constitute its controlling feature. Held, further, that inasmuch as the greater proportion of the stock, properly inventoried, amounted in value to approximately $42,000,000, and recovery was had for but $23,000.00, the inventory in the instant case substantially meets the requirements of the policy.

2.   INSURANCE POLICY—Requirement to Keep Books—Substantial Compliance. The provision of a policy of insurance that "the assured will keep a set of books, which shall clearly and plainly present a complete record of the business transacted, * * * is substantially complied with by the assured keeping a set of books clearly showing such matters to men of ordinary intelligence. Evidence examined, and held sufficient to show a substantial compliance with such provisions.

3.   INSURANCE POLICY—Construction—"Stored." Gasoline was not "stored," within the meaning of the terms of the policies of insurance involved, by keeping a small quantity thereof in a closed metallic container on the premises for the purpose of ocasionally cleaning the wearing apparel of the assured; and the use of a candle in a room where such gasoilne was found did not avoid the policy.

4.   APPEAL AND ERROR—Discretion of Trial Court—Harmless Error—Submission of Issues—Special Findings. Instructions given and refused examined. Held ,there was no prejudicial error therein.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by Leon Eisman, survivor of John Eisman and another, partners doing business as "Eismans" and another, against the Hanover Fire Insurance Company, a corporation, and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Scothorn, Caldwell & McRill,* for plaintiffs in error.

*Ames, Chambers, Lowe & Richardson* and *G. A. Paul,* for defendants in error.

BLEAKMORE, J.   This case presents error from the district court of Oklahoma county.   John Eisman and Leon Eisman, partners, doing business under the firm name of "Eismans," commenced actions against 14 fire insurance companies on a large number of policies.   Pending the cases John Eisman died, and the same were prosecuted by Leon Eisman, as surviving partner. The 14 separate cases were, by agreement of parties, upon order of the court, consolidated and tried to a jury as one case, resulting in a verdict for plaintiff in the sum of $23,000, upon which judgment was rendered against each company for its *pro rata* share of the amount of the verdict.   From this judgment the insurance companies (defendants below) have brought the proceedings here for review.   The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

For some time before the issuance of the policies sued on the plaintiffs were part owners of, and had been conducting, a wholesale business at 1 to 3 West Grand avenue, in Oklahoma City, under the name of Gerson, Eisman & Co., and later became the sole owners of said business.   Plaintiffs discontinued the wholesale business, and engaged in the sale of their stock at retail, and at the time of the loss in question, on January 6, 1913, were located at 118 and 120 West Main street, in Oklahoma City.   The

fire occurred, and the stock of merchandise insured was partially destroyed. The total value of the stock at the time of the fire was approximately $47,000. The total amount of insurance was $43,000, and the amount of the loss and damage was approximately $30,000. Immediately after the fire a represeneative of the defendant companies entered into negotiations with plaintiffs looking to an adjustment of the loss. No adjustment was reached, and on March 3, 1913, proof of loss was made, and on March 8, 1913, upon the request of defendant, additional proofs of loss were submitted. On the 12th of March plaintiffs appointed an appraiser in writing, and requested that defendants do likewise. This request was refused, and shortly thereafter the suits were instituted. The defendants answered, admitting the execution of the policies, but denying liability thereunder, for the reason that plaintiff had not substantially complied with the terms and conditions of said policies, and alleged, among other things:

"The following covenants and warranties on the part of the assured and conditions on the part of the insurance company are hereby made part of the policy to which this clause is attached:

"(1) The assured will take an itemized inventory of stock hereby insured at least once in each calendar year, and, unless such inventory shall have been taken within twelve (12) calendar months prior to the date of this policy, the same shall be taken in detail within thirty (30) days after said date, or this policy shall be null and void from and after the expiration of said thirty (30) days, and upon demand of the assured, within three months from the date of this policy, the unearned premium for the unexpired term of this policy shall be returned.

"(2) The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments of such stock, both for cash and credit, from the date of the inventory provided for in the first section of this clause, and during the continuance of this policy.

"The assured will keep such books and inventory, and also
Form 21

the last preceding inventory, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy, or the portion thereof containing the stock described therein, is not actually open for business, or, failing in this, the assured will keep such books and inventories at night, and at all such times, in some place not exposed to fire which would ignite or destroy the aforesaid building, and, in case of loss, the assured specifically warrants, agrees, and covenants to produce such books and inventories for the inspection of said company.

"In the event of failure on the part of the assured to keep and produce such books and inventories for the inspection of said company, this entire policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The defendant later amended its answer as follows:

"Answering further, and for a fifth defense to palintiff's petition herein, defendant alleges and states that the insurance policy upon which plaintiffs bring and prosecute this action is the regular Oklahoma standard form of fire insurance policy, and contains written therein and constituting a valid and binding part thereof, the following provision, to wit:

" 'This entire policy, unless otherwise provided by agreement indorsed herein or added hereto, shall be void  *  *  *  if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above-described premises  *  *  *  gasoline.  *  *  *'

"And defendant further alleges and states that there was indorsed upon said policy of insurance a gasoline permit which was and is in words and figures as follows:

" 'Gasoline Permit.—Permission for the use of gasoline stoves and lamps, the reservoirs to be filled by daylight or closed incandescent electric lights only, and when the stoves and lamps are not in use. Warranted by the assured that no artificial light except closed incandescent electric lights shall be permitted in the rooms when the reservoirs are being filled. Also permission granted for gasoline, naphtha, benzine, or any other of the light products

of petroleum to be kept on the premises in quantities in all not exceeding ten gallons, the same to be kept in a closed metallic can free from leak. Warranted by the assured that the drawing shall be done by daylight or closed incandescent electric lights only, and that no artificial lights except closed incandescent electric lights shall be permitted in the rooms where such fluids are stored.'

"And defendant further alleges and states that in violation of said terms of said insurance policy as revised and amended by the indorsement thereon of said gasoline permit, and in vioaltion of the express warranties contained in said gasoline permit, plaintiff had used and permitted artificial lights other than closed incandescent electric lights in the rooms where gasoline was kept and stored at the time of said fire."

Numerous assignments of error are made, and it is urged that a reversal of the judgment of the trial court should be had for the following reasons: (1) The insured failed to substantially comply with the iron safe and book warranty clauses of the policies. (2) The policies were forfeited by the use of artificial light other than closed incandescent lights in a room where gasoline was kept and stored. (3) Error in refusing to submit to the jury nine special findings requested by defendant. (4) Error in refusing requested instruction No. 2 of defendant in giving instruction No. 6 by the court.

All the policies of insurance were not issued at the same time. Four or five were issued prior to March 29, 1912, on which date the plaintiff took an inventory of the property covered thereby, which was produced and exhibited to the representative of the defendant shortly after the fire. Another inventory of said property was also produced made by the plaintiff on August 26, 1912. There had been an inventory taken about the 1st of April, 1911, by Gerson, Eisman & Co., which was not demanded by the representative of the companies during the negotiations for an adjustment of the loss, nor thereafter. This 1911 inventory, as disclosed by the evidence, was in charge of a bookkeeper and plaintiff testi-

fied that, while the bookkeeper had no special instructions as to such inventory, they had a vault, and he presumed it was kept there, although it might have been destroyed prior to the removal of the stock of merchandise from Nos. 1 and 3 West Grand avenue to their location at the time of the fire, as it was regarded by him of no consequence after the inventory taken in March, It is urged that failure to produce this inventory is such breach of the condition, that "the insured will keep such books and inventory, and also the last preceding inventory, securely locked in a fireproof safe at night, * * * and, in case of loss, the assured specifically warrants, agrees, and covenants to produce such books and inventories for the inspection of said company," as to nullify and avoid the policies issued prior to March 29, 1912.

The inventories of March 29 and August 26, 1912, were both produced. Upon the trial it does not appear that this point was raised, and it is presented here under the assignment relating to the overruling of a demurrer to the evidence and request for peremptory instruction. Such demurrer and request were interposed in the consolidated case, and applied to all of the policies and to the companies jointly. Inasmuch as the objection now attempted to be raised, if good, applied only to some of the defendant companies and to a portion of the sum sought to be recovered, and not to all of the defendants and the whole of the insurance, and the matter was not specifically called to the attention of ehe trial court, it is not available here. Again, this point is not well taken, for the reason that neither the representative of the defendant companies at the time he was attempting to adjust the loss, nor the defendants thereafter, requested that such inventory be produced for their inspection; in fact, demand for its production does not appear to have been made by defendants either before or at the trial.

It is insisted by the defendants that the inventories of March 29 and August 26, 1912, are fatally defective, in that they are not itemized in accordance with the requirements of the book

warranty clauses; and the case of *Shawnee Fire Ins. Co. v. Thompson & Rowell,* 30 Okla. 466, 119 Pac. 985, is cited as conclusive of this question.

In the instant case there appears in the inventory, among others, the following items:

Inventory of one sample line....................................................................$ 391.63
Value of 6 lines ....................................................................................$2,349.78

It will be remembered that the property insured consisted in part at least of a wholesale stock of merchandise; and doubtless a sample line had a definite and certain meaning, as embracing samples of the various goods kept for sale in such an establishment, and described as certainly and intelligently to those engaged in and acquainted with such business the articles contained in such sample line and their value as if each had been specifically named and its value given.

Again, there appears in said inventory as one item, "Merchandise stock of Thomas Bros., $1,200.00." This stock of goods had been purchased by the plaintiffs from Thomas Bros., of Tishomingo, Okla., and was placed in bulk in their store at Oklahoma City shortly before the taking of the last inventory. There are numerous other items in said inveneory, such as, "1 Lot Flu. & Susp. But. & Buckles & Supplies, $50.00." All of these items aggregate but one-ninth of the entire inventory; and the remainder of said stock of merchandise appears in said inventory item by item with the values set opposite. Should all of the goods which it is claimed are not properly itemized be eliminated from the inventory, and not considered, the merchandise on hand at the time of the fire amounted in value to almost $42,000. The total recovery was but for $23,000. While this method of taking an inventory is properly subject to criticism, yet the deficiencies complained of do not pervade it as a whole, nor constitute its controlling feature. We are of opinion that, as an entirety, the

inventory as made substantially meets the requirements of the policies.

In *Arnold v. Indemnity Fire Ins. Co.*, 152 N. C. 232, 67 S. E. 574, there is found the following:

"It was chiefly contended before us that the inventory was defective by reason of the following items appearing in the same: 'Harness, robes, collars, and horse blankets, $1,250.00.' Such an item in itself does not come within any proper or approved definition of an inventory said to be 'a detailed and itemized statement of the articles composing the stock with the value of each.' *Roberts v. Ins. Co.*, 19 Tex. Civ. App. 344, 48 S. W. 559, approved in *Coggins v. Ins. Co.*, *supra*, [144 N. C. 7, 56 S. E. 506, 8 L. R. A. (N. S.) 839, 119 Am. St. Rep. 924]. And, if this had been the general character of the inventory relied on, or the greater portion * * * of it, the objection would have to be sustained. But, as heretofore, much the larger portion of the amount, and the articles of chiefest value and which fixed the general character of the business, were set out, itemized, and valued; and in a case of this character we are of opinion that such an inventory should not be entirely set aside and a forfeiture declared, because a single item or inventory of the kind referred to was not in strict compliance with the contract. In *Assurance Co. v. Redding*, *supra* [68 Fed. 708, 15 C. C. A. 619] the required books and data were produced, except a cash sales book covering a period of 21 days before the fire which had been inadvertently left out. Held, that the promissory warranty was a condition subsequent, and that the evidence justified a finding of substantial compliance. In *Brown v. Palaline Co.*, 89 Tex. 590 [35 S. W. 1060], *supra*, the blotter containing the cash sales of the day before the fire had been left out of the sale for the purpose of transferring the entries later to more substantial books, and was destroyed. All other books were produced, and it was held a substantial compliance.

"In this case the digest, relevant to the present inquiry, is as follows: '(1) It will not be presumed that the parties intended to prescribe that which was practically impossible, such as absolute accuracy in the keeping of the books. A substantial compliance would suffice in such case, and the contract be construed as

requiring no more than could be reasonably expected of the insured. (2) · The purpose of such warranty will be considered in construing the language and determining whether its intent and meaning has been complied with in keeping the books. (3) Books so kept as to enable the insurer with reasonable certainty to arrive at the amount of loss should be held a compliance with the contract. (4) Whether the books so kept and produced by insured were a substantial compliance with the warranty being a question of fact determined in the affirmative by the trial court, the Court of Civil Appeals, not finding the facts otherwise, improperly held that the failure to enter the sales of the last day upon the books worked a forfeiture as a matter of law.' Like comment, sustained by the same and similar authorities, may be made in reference to another item in the inventory as follows: 'Sloan's medicine, oil, whips, summer robes, lots of different kinds of medicines, and secondhand harness, $775.00.' "

Had the goods referred to in the items of the inventory criticized by defendant never been included in the stock of plaintiff, the jury, under the evidence, might well have returned a verdict for the full amount recovered.

While the facts in the *Thompson & Rowell Case,* 30 Okla. 466, 119 Pac. 985, are in some respects like those in the instant case, yet, as a whole, they are entirely dissimilar. In the Thompson & Rowell Case the alleged value of the merchandise insured was $13,500, and the value of the goods not itemized was approximately $6,000, or nearly one-half the value of the whole; and in that case it was said:

"The inventory furnishes nothing upon which to base a calculation. The items to which we have especially referred comprise from one-third to one-half of the stock of goods, and, even if it should be conceded that the remainder of the stock was properly inventoried, the objectionable part appears so large a proportion to the full amount that it cannot be held to be a substantial compliance with the requirements of the insurance contract. * * * To be sure, a substantial compliance therewith would be sufficient, but in this particular instance there

was no substantial compliance with the terms of said contract. Counsel for plaintiffs insist that there has been, but we think otherwise. Here it is shown that in some instances the itemized invoices of certain job lots of goods had been taken, but, strange to say, they had been placed within the boxes containing the goods, and had been nailed up and stored away, and were burned with the goods. The inventory should have been kept in the iron fireproof safe or in some other place of safety. The improbable story that, of a stock of goods worth from $15,000 to $16,000, a member of the firm could not tell when a $1,500 purchase of clothing was made, or when it was received, whether before or after the October inventory, or from whom it was purchased, and that the original invoice had burned, and that no attempt was made to secure a duplicate thereof, marks this phase of the case as most unusual, and aids materially in rendering the October inventory worthless, as a substantial compliance with the terms of the contract."

Again, it is contended by defendant that plaintiffs breached book warranty clause, in that they did not keep a set of books clearly and plainly presenting a record of their cash sales. From the evidence it appears that whenever a sale was made for cash a ticket or sale slip was made out by the clerk showing the article sold and the amount, and this ticket, with the cash, was delivered to the cashier, the money placed in and indicated by a cash register, and the ticket put on file. At the close of the day's business the total cash sales were entered in a cashbook, and this book was produced for the inspection of defendants, and upon the trial offered in evidence. This we hold to be a substantial compliance with the provisions of the policy. *Scottish Union & Nat. Ins. Co. v. Moore Mill & Gin Co.*, 43 Okla. 370, 143 Pac. 12.

In *Malin v. Mercantile Town Mutual Ins. Co.*, 105 Mo. App. 625, 80 S. W. 56, it is said:

"The inventory required to be made once a year was made in August previous to the fire. It contained an itemized account of the merchandise then on hand, and furnished the defendant a full and detailed account of the merchandise in the store at the

time it was made, and the bills of what had been subsequently bought and put in the store, and showed all the additions made to the stock after the inventory was taken; but there was no itemized account of what had been sold for cash—no bill of particulars. The amount of cash taken in was entered daily in a book kept for that purpose, and the aggregate of cash taken in was shown to be $1,949. The sales on credit were shown to have been $147.45. The average per cent. of profit at which plaintiff sold was said by him to be 20 per cent. above the cost price; hence all the data were present from which an approximately correct estimate of the contents of the store at the time of the fire could have been readily made. But it is contended that this was not a compliance with the requirements of the policy in respect to keeping a set of books. That requirement reads as follows: 'The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transactions, including all purchases, sales, and shipments, both for cash and credit, from date of invoice.' A literal compliance with this provsiion of the policy would require the assured to record each article sold, its cost, the price sold for, and the name of the purchaser. We do not think a failure to comply literally with this provision of the policy should work a forfeiture. The purpose of the requirement was that in case of loss or damage, the assured would have kept such book accounts of his invoices, purchases, and sales as would show the amount of goods on hand at the time of the fire, and thus furnish data from which to make a reasonably correct estimate of the loss or damage. We think the plaintiff, by the production of the invoice taken in August previous to the fire, his bills of purchases after the invoice, and his daily cash sales and sales on credit made after the taking of the invoice, furnished the data by which the amount and value of the goods in the store at the time of the fire could have been reasonably estimated, and that he ought not to be held to have forfeited his policy for having failed to literally comply with the clause of the policy under consideration."

See, also, *First Nat. Bank of Hubbard v. Cleland,* 36 Tex. Civ. App. 478, 82 S. W. 337; *Scottish-Union & Nat. Ins. Co. of Edinburgh v. Andrews & Matthews,* 40 Tex. Civ. App. 184, 89 S. W. 419; *Prudential Fire Ins. Co. v. Alley,* 104 Va. 356, 51

S. E. 812; *Georgia Life Ins. Co. v. Friedman* (Miss.) 63 South. 214; *Continental Ins. Co. v. Rosenberg,* 7 Pennewill (Del.) 174, 74 Atl. 1073; *Arkansas Mutual Fire Ins. Co. v. Stuckney,* 85 Ark. 33, 106 S. W. 203; *Arkansas Ins. Co. v. McManus,* 86 Ark. 115, 110 S. W. 797; *Home Fire Ins. Co. v. Driver,* 87 Ark. 171, 112 S. W. 200; *Queen of Ark. Ins. Co. v. Malone* (Ark.) 163 S. W. 771.

It is further contended that the policies sued on were forfeited and rendered null and void by reason of the fact that the insured, in violation of the terms thereof, used and permitted artificial light other than closed incandescent lights in the rooms where gasoline was stored. It is provided by the policies:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if (any usage or custom of trade or manufacture to the contrary notwithstanding there be kept, used, or allowed on the above-described premises * * * gasoline."

This provision was modified by indorsement upon the policies of a gasoline permit, the pertinent parts of which are:

"Permission granted for gasoline * * * to be kept on the premises in quantities in all not exceeding ten gallons, the same to be kept in a closed metallic can free from leak. Warranted by the assured that the drawing shall be done by daylight or closed incandescent electric lights only, and that no artifical lights except closed incandescent electric lights shall be permitted in the room where such fluids are stored."

At the time of the fire plaintiffs occupied a two-story building, using the ground floor for their retail department, and several rooms on the second floor for the storage of merchandise. On the second floor candles were used for artifical light. In one of these rooms a negro porter occasionally cleaned the clothing of plaintiffs, using gasoline to remove the spots. Ten cents worth of gasoline was purchased at a time for such purpose and kept in a

closed metallic can. The cleaning of the clothing was done in a room referred to in the testimony as room No. 1. At the time of the fire one of the firemen found a two-gallon gasoline container partly filled in room No. 2 on the second floor. and removed it from the building. The evidence does not disclose thae candles were ever used in this room; but, even if such light had been permitted in the room in which said container was found, it cannot be held, as a matter of law, that gasoline was "stored" in said room within the meaning of the terms of the policies. The case of *Thompson v. Equity Fire Insurance Co.,* 3 British Ruling Cases 7, and the exhaustive note accompanying the same, in which the American as well as English decisions are collated, are conclusive of this question. In that case it is said:

"It is difficult, if not impossible, to give an accurate definition of the meaning; but, if one takes a concrete case, it is not very difficult to say whether a particular thing is 'stored or kept' within the meaning of the condtion. No one probably would say that a person who had a reasonable quantity of tea in his house for domestic use was 'storing or keeping' tea there, or (to take the instance of benzine, which is one of the proscribed articles) no one would say that a person who had a small bottle of benzine for removing grease spots or cleansing purposes of that sort was 'storing or keeping' benzine."

In *La Force v. Williams City Ins. Co.,* 43 Mo. App. 518, it is said:

"The rule is that the use of a prohibited article which will forfeit a policy must be an habitual use for the ordinary purposes to which such an article is usually put, and not an occasional introduction and use for temporary and extraordinary purposes connected with the occupation of the premises." *Williams v. Fireman's Fund Ins. Co.,* 54 N. Y. 569, 13 Am. Rep. 620; *Williams v. People F. Ins. Co.,* 57 N. Y. 275; *Mears v. Humbolt Fire Ins. Co.,* 92 Pa. 15, 37 Am. Rep. 647; *Arnold v. American Ins. Co.,* 148 Cal. 666, 84 Pac. 182, 25 L. R. A. (N. S.) 6; *Columbia Planing Mill Co. v. Insurance Co.,* 59 Mo. App. 204; *Smith v. German Insurance Co.,* 107 Mich. 207, 65 N. W. 236,

30 L. R. A. 368; *American Cent. Ins. Co. v. Chancey* (Tex. Civ. App.) 127 S. W. 577; *Springfield Fire Ins. Co. v. Wade*, 95 Tex. 598, 68 S. W. 977, 58 L. R. A. 714, 93 Am. St. Rep. 870.

The refusal of the court to submit to the jury nine special findings of fact requested by defendants is urged as a ground for reversal. Clearly this is a matter entirely within the discretion of the trial court. Section 21, art. 7, of the Constitution (section 206, Williams') provides:

"In all jury trials, the jury shall return a general verdict, and no law in force, nor any law hereafter enacted, shall require the court to direct the jury to make findings on particular questions of fact; but the court may, in its discretion, direct such special findings." *King v. Timmons*, 23 Okla. 407, 100 Pac. 536.

It is insisted that the court erred in refusing to give the following instruction requested by defendants:

"If you believe from the evidence that plaintiff kept or stored gasoline in the room upstairs, and that he or his employees used a candlelight in such room or rooms while gasoline was so kept or stored there, then plaintiff thereby breached and violated the insurance policy, and your verdict must be for the defendant."

In the light of what we have heretofore said, this action of the court was manifestly proper.

It is contended that the court committed reversible error in giving the following instruction:

"With reference to the various clauses and conditions of the policies which the defendants allege to have been violated, you are instructed that the law does not require a technical and literal compliance with each and every of the terms and conditions stated in the policies, but only requires a substantial compliance therewith, and the use of such precaution by the plaintiffs to comply with said conditions and provisions as a prudent man acting in good faith and in the exercise of reasonable care would exercise. And if you believe from the evidence by a preponderance thereof

that the plaintiffs did substantially comply with, or used such efforts and precautions as a prudent man, acting in good faith and in the exercise of reasonable care, would exercise, to comply with the various clauses and conditions of the said policies, which were binding upon his part to be performed, and that plaintiffs did not procure or cause to be procured or plan the said fire, then your verdict should be for the plaintiffs. If, however, you believe from the evidence that the plaintiffs failed to substantially comply with the various clauses and conditions of the said policies on their part to be performed, or failed to use such precautions to comply with said conditions and provisions as a prudent man, acting in good faith and in the exercise of reasonable care, would exercise, or that the plaintiffs caused or planned the said fire, then your verdict should be for the defendants."

While ordinarily questions of law should be determined by the court, and may not properly be referred to a jury, yet in the instant case, if there was error in submitting said instruction to the jury, in view of what we have held as to such questions, the jury determined the same correctly, and we must hold that such error was not prejudicial to the rights of the defendant.

It follows from the foregoing that the judgment of the trial court should be affirmed, and it is so ordered.

All the Justices concur.