## FIDELITY & DEPOSIT CO. of MARYLAND v. WOOD.

No. 13509—Opinion Filed Jan. 11, 1923.

(Syllabus.)

1. **Insurance—Action on Burglary Policy—Evidence—"Books and Accounts"—Invoices.**

In a suit on a burglary insurance policy which requires assured to keep a set of books and accounts, the original invoices of merchandise purchased are admissible in connection with the ledger and cash book.

2. **Same—Clause Requiring "Books and Accounts"—Compliance.**

Where the policy provides the company shall not be liable for loss or damage unless books and accounts are kept by the assured, and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the company, it is not necessary for assured to keep a set of books from which the exact items stolen can be ascertained, and it is not necessary that an itemized merchandise account be carried showing items of purchase and items of sale. It is sufficient compliance with this clause of the policy if a man of ordinary intelligence can ascertain from the books, with reasonable certainty the amount and value of the goods stolen.

Error from District Court, Muskogee County; Guy F. Nelson, Judge.

Action by R. G. Wood against the Fidelity & Deposit Company of Maryland on burglary insurance policy. Judgment for plaintiff, and defendant brings error. Affirmed.

George S. Ramsey, Edgar A. De Meules, Malcolm E. Rosser, and Villard Martin, for plaintiff in error.

Irwin Donovan and C. G. McKoin, for defendant in error.

COCHRAN, J. This was an action instituted by R. G. Wood against the Fidelity & Deposit Company of Maryland to recover on a burglary insurance policy. The parties will be designated plaintiff and defendant, according to the position occupied in the lower court.

The policy sued on contains the following provision:

"The company shall not be liable for loss or damage unless books and accounts are kept by the assured and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the company."

In order to show a compliance with this provision of the policy, the plaintiff introduced books in which were entered the original invoices and amounts of subsequent invoices covering goods received, and also showing sales made from such stock, and the expenses. These books did not show the items of the various invoices, neither did the books showing the sales show the items which were sold; but in each instance the amount of the invoice and the amount of the daily sales were entered in lump sums. The plaintiff also introduced in evidence the original invoices covering a portion of the goods which were entered on the book showing

merchandise purchased. The defendant contends that the original invoices were inadmissible, and cites the case of Fisher v. Sun Insurance Office of London (W. Va.) 83 S. E. 729, L. R. A. 1915 C.; but that case is not decisive of the question here, because the invoices in that case were supplied after the fire by the wholesale merchants and were not the original invoices received at the time the goods were purchased. That case in no way conflicts with the opinion of the same court in Ruffner Bros. v. Duchess Ins. Co., 59 W. Va. 432, 8 Ann. Cas. 866, as follows:

"Having an inventory at a given date, however, and the invoices of goods subsequently put in, the determination of the aggregate value of all the goods in the store at the date of inventory and those subsequently put in is a mere matter of addition."

In Swartz v. Metropolitan Surety Co., 113 N. Y. Supp. 66. the court said:

"In determining whether 'the books and accounts' kept by the assured were of the character required by the terms of the policy, it is proper to consider both the book of account and invoices. If from an inspection of both of these sources, the actual loss is ascertainable, there is no breach by the assured of the condition of the policy quoted above."

The original invoices of merchandise were admissible in evidence.

The plaintiff's books showed an item of $2,141 which was not itemized on her books and for which she had no invoice; but the testimony showed that these goods consisted of items which she had purchased in the Philippine Islands and brought with her to this country; that she made a list of the articles at the time they were opened in her store, the list being made in pencil and afterwards typewritten; that the total amount of the goods was entered on her books after she had listed the same, as above stated. The original list has been lost, but the typewritten list was offered in evidence, but excluded upon the objection of the defendant. The failure of the court to strike the testimony as to this item was not error, and our holding in regard thereto is governed by the rule announced in connection with the last proposition raised by defendant.

Complaint is made of the introduction of a custom certificate and express receipt covering shipments received by the plaintiff and which were entered in a lump sum on a book, the original invoices not having been introduced in connection with these items shown on the books. It was not error to admit these exhibits, in connection with the books introduced and in connection with the other invoices, as tending to corroborate the testimony of the plaintiff that she entered the merchandise received upon receipt thereof.

Defendant complains of the action of the trial court in permitting the plaintiff to testify about the effort she made to obtain a form for proof of loss prior to the time such proof was made. In the proof of loss submitted to the company, the plaintiff showed a loss of $5,457.79. In her petition filed in this case, she alleged her loss to be $9,403.-41. Evidence was introduced and admitted tending to prove the latter sum. The testimony relative to the effort to procure a form for making a proof of loss was introduced for the purpose of showing the discrepancy between proof of loss as made and the allegations of the petition resulting from the fact that the proof of loss was hurriedly prepared and without an opportunity of having the books properly audited; and the testimony was admissible for that purpose. Other objections to introduction of testimony are assigned as error, but the admission of the same could not have misled the jury.

The final contention of the defendant is that the court erred in refusing to instruct the jury to return a verdict for the defendant and it contends that the testimony shows that the condition of the policy's provision that the company should not be liable for loss or damage unless books of account are kept by the assured and kept in such a manner that the exact amount of loss can be accurately determined therefrom by the company, was not complied with, and contends that because the merchandise purchased and sold was not itemized on the books, but both merchandise purchased and merchandise sold were entered in lump sums on the books, there was not a compliance with the provisions of the policy. This court has repeatedly held that—

"The book clause of the insurance policy was sufficiently complied with when the assured kept a set of books sufficient to enable a man of ordinary intelligence to ascertain with reasonable certainty the amount and the value of the goods destroyed." Scottish Union & National Ins. Co. et al v. Moore Mill & Gin Co., 43 Okla. 370, 143 Pac. 12; Springfield Fire & Marine Ins. Co. v. Halsey, 52 Okla. 469, 153 Pac. 145; Springfield Fire & Marine Ins. Co. v. Hays, 57 Okla. 266, 156 Pac. 673; Queen Ins. Co. of America v. Dalrymple, 60 Okla. 28, 158 Pac. 1154; Springfield Fire & Marine Ins. Co. v. Griffin, 64 Okla. 131, 166 Pac. 431; Hanover Fire

Ins. Co. v. Elsman, 455 Okla. 639, 146 Pac. 214; Royal Insurance Co. v. Scritchfield, 51 Okla. 523, 152 Pac. 97.

It is the contention of the defendant that the plaintiff should have kept such a set of books that it would have been possible for the company to have ascertained the exact articles, together with the price thereof, which were stolen from the place of business; and, in order to do so, an itemized merchandise account should have been carried showing the items purchased and purchase price, and items sold, together with the cost price and sales price. No such expert method of keeping books has been required by the courts in order to comply with similar provisions of insurance polices. In Insurance Co. v. Kearney, 180 U. S. 132, the court said:

"The covenant in the policy to keep a set of books showing complete record of business transacted, including all purchases and sales both for cash and credit, should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in large business houses in a great city. That provision is satisfied if the books kept were such as would fairly show to a man of ordinary intelligence all the purchases and sales, both for cash and credit."

In Malin v. Mercantile Town Mutual Ins. Co. (Mo. App.) 80 S. W. 56, the books kept consisted of an itemized inventory of the goods on hand when the store was opened and invoices of the goods subsequently purchased; but there was no itemized account of the goods sold for cash. The amount of cash taken in was entered daily in a book kept for that purpose in a lump sum, and the insured testified that the average per cent of profits on goods sold was 20 percent above the cost price. The insurance company made the same contention as is made here, and in passing on that question, the court said:

"A literal compliance with this provision of the policy would require the assured to record each article sold, its cost, price sold for, and the name of the purchaser. We do not think a failure to comply literally with this provision of the policy should work a forfeiture of the policy, but the purpose of the requirement was that in case of loss or damage, the assured would have kept such book accounts of his invoices, purchases, and sales as would show the amount of goods on hand at the time of the fire, and thus furnish data from which to make a reasonably correct estimate of the loss or damage. We think the plaintiff by the production of the invoice, his bills of purchases after the invoice, and his daily cash sales and sales on credit made after the taking of the invoice

furnished the data by which the amount and value of the goods in the store at the time of the fire could have been reasonably estimated."

In Georgia Life Ins. Co. v. Freedman (Miss.) 63 South. 214, it is said:

"Courts do not favor forfeiture of policies for purely technical violations. Counsel for appellant, in their brief, say that section 7 'simply means that the books of account kept by the insured must show in detail the stock of goods he had on hand at the time of the burglary, so that an inventory taken after the burglary will show the exact amount of goods stolen.' We gather from their argument that they contend the books should show at the end of every day the exact number of all articles in the store, say, the number of hats, pairs of shoes, and so on. We cannot agree with this strict construction of this section. We believe that the books are sufficiently kept if they will enable a man of average intelligence to ascertain with reasonable certainty the loss sustained. It would be well-nigh impossible to comply with the strict requirement of section 7 as it is interpreted by counsel."

In Olson v. Great Eastern Casualty Co. (Minn.) 183 N. W. 826, the court, in interpreting a provision of a policy similar to the one in the case at bar, said:

"Under the clause referred to, it was not that the books kept should itemize what is usually termed a cash book, or that the books should be kept on any particular system. It was sufficient if the books were kept in such manner that with the assistance of those who kept them, or understood the system on which they were kept, the amount of the purchases and sales could be ascertained and cash transactions distinguished from those on credit, although it might be slow and difficult to do this."

Under the foregoing authorities, it was not necessary for the assured to keep an itemized statement of the goods sold, and it was sufficient that the record was kept from which the total daily sales could be ascertained.

This disposes of all questions except the failure of the assured to keep a set of books in which were entered an itemized statement of goods purchased. The authorities which have been cited, holding that itemized statement of the sales is not necessary, are in point on this question. The object of this clause in the policy being to enable a man of ordinary intelligence to ascertain from the books with reasonable certainty the amount and value of goods destroyed, it is not necessary that the books should show an itemized statement of the goods purchased. If books are kept showing the initial invoices,

the totals of each invoice of goods purchased thereafter, and the sales made, the amount and value of the goods stolen can be ascertained by taking the invoices of the goods on hand after the burglary and using the same in connection with the books giving the information above stated. This, of course, would not give the articles stolen, but it is not necessary that this should be done. All that is necessary is to ascertain the value of the stock lost by the burglary. If it is not necessary to enter in the books the items sold, it can serve no useful purpose in ascertaining the items stolen from the assured to carry on his books an itemized statement of the goods purchased. As said in Continental Ins. Co. v. Rosenberg (Del.) 75 Atl. 1073:

"It cannot be assumed that the insured intended by such a method of keeping his books to defraud the company, and, even if the goods sold were described in a general way in said books, which is all that is contended for, we do not see how fraud or misrepresentation could be thereby prevented. To accomplish such object, it would be necessary to give, not only the items, but the names of the persons from whom the goods were bought, and perhaps other and fuller particulars."

It is our opinion that the case was properly submitted to the jury on the question of a compliance with this provision of the policy, and that the evidence is sufficient to sustain the verdict of the jury. The judgment of the trial court is affirmed.

JOHNSON, KENNAMER, NICHOLSON, and BRANSON, JJ., concur.