NATIONAL SURETY CORPORATION
v. SMOCK et al.

No. 33939. Jan. 23, 1951.

Rehearing Denied March 6, 1951.

Second Petition for Rehearing
Denied March 20, 1951.

*228 P. 2d 659.*

Looney, Watts, Ross, Looney & Smith, Oklahoma City, for plaintiff in error.

Leslie L. Conner, Charles W. Conner, Arnold B. Britton, and A. L. Hilpirt, Oklahoma City, for defendants in error.

JOHNSON, J. The parties herein occupied reverse positions in the trial court, and hereafter they will be referred to as they appeared therein.

The plaintiffs, J. C. Smock and M. M. Smock, d/b/a Glass Bar and Tap

Room, brought this action against the defendant, National Surety Corporation, a corporation, alleging that defendant issued and delivered to them a protection policy for which plaintiffs paid a premium of $43, and that the policy was in force on January 28, 1948, at 11:35 p.m., when their place of business was robbed by persons unknown of $432.50 in cash; that defendant was notified of the robbery and its adjuster came to their place of business, took written statements, and thereafter notified plaintiffs that defendant was willing to pay their claim to the extent of $135.25, and denied liability on any amount in excess thereof and so advised plaintiffs. Plaintiffs further alleged that by defendant's delayed action, statements, conduct and denials, it waived the provisions of the policy requiring written proof be furnished of the loss; that denial of liability by defendant made useless any further attempt of plaintiffs to comply with the terms of the policy; that plaintiffs furnished defendant all the records and information which they kept in accordance with the terms of the policy, and prayed recovery against defendant for the sum of $432.25.

In answer thereto the defendant denied generally the allegations of the petition. It admitted the issue and delivery of a combined robbery policy. It denied any knowledge of the robbery of the tap room other than statements of the plaintiffs, and alleged that it offered to pay plaintiffs, $135.25, the actual amount of the loss for which plaintiff could account in accordance with the terms and provisions of the policy, and denied that it was liable in any greater amount for the reason that the alleged additional amount of $297, claimed to have been taken from the billfold of Mr. Smock, was not covered by the insurance contract; that plaintiffs failed to establish any loss exceeding the amount it offered to pay plaintiffs. Defendant in its answer tendered the $135.25 into court in full satisfaction of the obligation under the insurance policy.

Upon the issues thus joined, the cause was submitted to the jury. Evidence was adduced by both parties, and each rested, whereupon defendant moved for a directed verdict on the grounds that the evidence was insufficient to sustain recovery against defendant in excess of $135.25. The plaintiffs also moved for a directed verdict for the full amount claimed, $432.25. The court overruled defendant's motion, but sustained the motion of plaintiffs and directed the jury to return a verdict for the plaintiffs for $432.25. From judgment rendered thereon and unsuccessful motion for new trial, defendant appeals.

The evidence disclosed that the plaintiffs, J. C. Smock and M. M. Smock, were husband and wife, and that they owned and operated the tap room in question, and that the defendant, National Surety Corporation, issued to them a $3,000 standard robbery policy which contained a clause providing:

"Exclusions E. The corporation shall not be liable for loss (1) unless records are kept by the assured in such manner that the corporation can accurately determine therefrom the amount of loss."

That while the policy was in force an armed robbery occurred in the plaintiffs' place of business, and the robber took $125.50 plus the second shift sales of $13.05, which amounts were determined by the cash register slip placed in the register prior to the robbery and from the cash register tape which recorded all sales. In addition to the amount taken from the cash register $297 in currency was taken from the billfold of Mr. Smock, which was in his hip pocket. The amount taken from the cash register is not questioned by the defendant.

The plaintiffs contend that the defendant is liable for the loss, not only of the money taken from the cash

register, but also for the amount of $297 taken from the person of Mr. Smock.

The defendant predicates its appeal upon two propositions. First, "defendant was not liable for money taken from plaintiff's pocket book that was not covered by records from which defendant could accurately determine the amount of the loss." Second, "the entire contention of plaintiffs is based upon a slip of paper which they introduced in evidence over the objection of defendant. This was the 'Memorandum of Loss in Robbery' introduced as plaintiffs' Exhibit 35. If the slip of paper is not competent evidence, Smock is entitled to $138.55."

The memorandum of loss in robbery referred to here by defendant included the $297 taken from the person of plaintiff and the $138.55 taken from the cash register, less $3.50, which was dropped on the floor by the robber and recovered by plaintiffs.

The rule is that in an action on a "standard robbery" policy requiring insured to keep records in such manner that the corporation can accurately determine therefrom ·the amount of loss, whether insured had complied with such condition was for the trier of fact under the evidence. Price v. Century Indemnity Co., 333 Pa. 337, 5 Atl. 130.

Under the record clause of the policy no specific system or form of books is required to be kept by the insured, nor does it require a system of bookkeeping which will conform to the most scientific standards. The purpose of the clause is accomplished when the insured keeps his books in such a manner as to constitute a record of business transactions which a person who is of ordinary intelligence and is accustomed to accounts can understand; and what is a substantial compliance with the provision of a policy requiring the keeping of books depends, to a great extent, upon the circumstances of each case, since the methods of bookkeeping vary greatly and are prac-

tically innumerable. 29 Am. Jur., Insurance, sec. 722; Fidelity & Deposit Co. v. Wood, 88 Okla. 95, 212 P. 132.

In Hanover Fire Ins. Co. v. Eisman, 45 Okla. 639, 146 P. 214, Ann. Cas. 1918D, 288, we held that keeping a cash register and cash register books and bank accounts was a sufficient compliance with the bookkeeping provision of an insurance policy. (Note: this case cited and referred to in Am. Jur., sec. 722, supra.)

It is admitted by defendant that plaintiffs did keep certain books and records which consisted of cash register tapes recording all of the cash sales and cash expenditures from the register, a bank deposit book which showed generally the amounts of money deposited in the bank by the assured, and a cash slip which was placed in the cash register by the employee charged with the contents of the register and represented the amount of money in the cash register at the beginning of the day's business; that all of these records were kept in the usual course of business.

The cash register tapes for January, the month of the robbery, showed the daily receipts from the business ranging in amounts from $27.06 to as much as $106.11, and the total receipts for the month as shown by the cash register tapes admitted in evidence as plaintiffs' exhibits numbers 2 through 32 amounted to $1,529.40. The bank deposit record (plaintiffs' exhibit 33) showed a deposit of $534.84 for the month of January.

Mrs. Smock testified that at the end of the first shift of the day's business plaintiffs would take the daily receipts for the first run home with them and would count the money; that it was the daily procedure, and that it would be added to what they already had in the house. She testified that on the evening of January 27, 1948, when Mr. Smock went down to the place of business, she counted out $297, or thereabouts, and gave it to Mr. Smock.

Mr. Smock corroborated this testimony. He testified that Mrs. Smock gave him this money out of cash that they had accumulated from the business on previous days; that she had that much more money probably at home.

The record and the facts in this case justify the inference or finding that the $297 taken from the person of Mr. Smock was from the proceeds of the business covered by the policy.

The sole question for the determination of the trial court was, Did these records comply with the bookkeeping clause of the policy? The trial court answered in the affirmative, and we think correctly so. These records were identical with the records kept in the Hanover Fire Ins. Co. v. Eisman case, supra, except that the items on the cash register tapes had not been transferred to a cash register book, but, obviously, the rule applied there would apply here.

In this connection it is asserted by defendant that the memorandum of loss, which included both the amount taken from the cash register and the money taken from plaintiff's person, was made from memory and was therefore incompetent and insufficient to establish the loss; but it is evident that the amount of loss was ascertainable from plaintiffs' records, and the memorandum, if erroneously admitted as evidence, was harmless error. The purpose of requiring records to be kept is to prevent the perpetration of fraud by an insured. Here there is no question that a robbery occurred, and the trial court correctly found that the records were sufficient for the insurer to have determined the amount of loss, and there being no prejudicial error, the judgment is affirmed.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, CORN, DAVISON, and O'NEAL, JJ., concur. GIBSON and HALLEY, JJ., dissent.