The CITY OF BETHANY, a Municipal Corporation, Plaintiff in Error,

v.

The MUNICIPAL SECURITIES COMPANY, a Business Trust, Defendant in Error.

No. 35187.

Supreme Court of Oklahoma.

July 14, 1953.

Rehearing Denied Sept. 21, 1954.

C. C. Andrews, Gilliland, Withington & Shirk, Oklahoma City, for plaintiff in error.

Creekmore Wallace, Pryor, for defendant in error.

ARNOLD, Justice.

In support of the allegations in its petition the plaintiff, Municipal Securities Company, offered evidence to show that it was a common law trust created in 1920 for a period of 20 years, as provided by statute, and within that time extended the trust; that it bought the property here involved in 1926; that in 1926 plaintiff constructed a dam across a creek flowing across its property thereby creating a six-acre lake at or near the center of its property, at which time the creek running into the lake area was clear and unpolluted; that said inlet stream produces, even through dry weather, about 230 gallons of water per minute; that there is no inlet of water from any other source than said inlet stream except a certain amount of drainage from the whole water shed; that in about the year 1928 the City of Bethany built its original sewage disposal plant at a point approximately a mile south from plaintiff's property; that this disposal plant emptied its effluent into the creek above mentioned which flowed north and emptied into plaintiff's lake; that said original sewage disposal plant was not designed to and not sufficient to properly treat sewage for a population of more than 2500 people; that the City of Bethany had a population of more than 4500 at the time it extended or built practically new another disposal plant at the same site which was completed in the late fall of 1948; that the present suit was filed September 23, 1949; that for years preceding the filing of this suit the defendant had notice that its disposal plant was insufficient because of the increase in population and that the effluent from the plant was being insufficiently treated; that the notice to it was verbal, official and scientific; that the overloading of the old disposal plant being about double its capacity caused a by-passage of effluent of untreated sewage; that such effluent was in the approximate volume of 100,000 gallons per day; that said six acre lake was well stocked with fish and marine plant life and furnished excellent recreational facilities; that fish and marine life continued to grow until 1947; that the first fish died in April, 1947, but the lake was restocked with fish; that before the following spring an excessive amount of pollution from defendant's disposal plant entered the lake and all the fish and marine life except algae and also all the vegetation around the lake died; that this happened in February or March, 1948; that the water became very discolored and a strong stench developed; that the polluting from defendant's sewage disposal plant had the effect of overfertilizing the water of the lake causing an excessive growth of algae and the expulsion of oxygen; that the algae clogged the gills of the fish, suffocating them, and destroyed the marine plant life upon which the fish would feed if present; that the reasonable rental value of said lake for fishing and recreational purposes was $2,000 per year; that to remove the contamination caused by the effluent from defendant's disposal plant it would be necessary to remove a portion of the dam containing 8400 cubic yards at $1.10 per cubic yard and the removal and disposal of 36,307 cubic yards of polluted silt at $1.35 per yard; that the removal and replacement of the dam and removal of the polluted silt would reasonably cost $58,254.45; that the silt in said lake has accumulated to a depth of from three to six feet from the surrounding drainage area; that said silt should because of pollution be removed and deposited somewhere in the neighborhood where the seepage therefrom would not re-pollute this or other lakes or streams; in this connection its testimony suggested that probably the most feasible way to accomplish the aforesaid purpose would be to dig a pit and deposit the sludge or silt in said pit; that the cost of preparing such pit to contain

the polluted silt would require 10 days' use of a bulldozer at $100 per day or $1,000.

The cause was tried to a jury which returned a verdict on plaintiff's first cause of action for rental value for two years, as restricted by the court in accordance with the allegations of plaintiff's petition, in the amount of $2,500; on the third cause of action, the second having been dismissed by plaintiff before evidence was introduced, the verdict was in the sum of $28,150. Motion for new trial was overruled and judgment rendered in the total sum of $30,650.

During the course of the trial plaintiff offered in evidence exhibits 10 to 15, inclusive, which were admitted by the court over the objections of defendant. Defendant here contends that it was error to admit these exhibits because they were not public documents, they contained heresay evidence and conclusions and none of them were relevant to the issues involved in the case; that two of them, Nos. 12 and 13, were held incompetent in Noble v. City of Bethany, 206 Okl. 122, 241 P.2d 401. Exhibit 10 was a letter from the Commissioner of Health's office dated April 26, 1945, to the Mayor and City Council of Bethany stating that an inspection of the sewage disposal plant had been made and that it was undersize by 64% and recommending that the plant be enlarged; Exhibit 11 was a letter dated April 26, 1945, from the office of the Commissioner of Health to the Mayor and City Council of Bethany stating that an inspection of the plant had been made on the previous day in company with Bethany's water superintendent, that the plant was producing an unsatisfactory effluent, and recommending that an engineer be hired to design an adequate plant and suggesting some temporary expedients to aid in relieving the situation; Exihibit 12 was a letter dated March 5, 1946, from the office of the Commissioner of Health to the Mayor of Bethany stating that numerous complaints had been received about the plant from property owners nearby, that the Health Department had made numerous inspections, that the population of Bethany had increased and that the Department could not approve further extensions of the sewer system until a more adequate sewage disposal plant was provided; Exhibit 13 was a memorandum dated April 16, 1947, from J. P. Hutchinson, chemist, to H. J. Darcey, Chief Engineer, Bureau of Sanitary Engineering, stating that an inspection of the sewage disposal plant had been made and that it was inadequate in that it was passing about 25 per cent of the flow after chlorination, that the lake here in question was inspected and did not appear to be polluted, that the most likely cause of fish mortality would be due to oxygen deficiency; Exhibit 14 was a memorandum dated September 7, 1948, from Lester L. Settle to E. C. Warkentin of the State Health Department calling attention to defects in the operation of the new sewage disposal plant and making recommendations for their correction; Exhibit 15 was a letter from Lester L. Settle to the Mayor and City Council of Bethany making mention of the same defects and stating that they had been called to the attention of the engineers who were in charge of the construction of the new plant.

Plaintiff offered these exhibits to prove the facts therein stated and to show notice to the City of Bethany of the pollution caused by its sewage disposal plant and it contends here that the instruments if incompetent were harmless.

Defendant introduced evidence as follows: Joseph M. Plank, an engineer, testified that the firm by which he was employed was hired by the City of Bethany in the fall of 1946 to draw plans and specifications for a new disposal plant; that he inspected the old plant, then drew plans and specifications for a new plant; that he inspected the old plant several times thereafter; that he supervised the construction of the new plant from the time the work started in April, 1947, until he left his job in August, 1948; that at the time he quit the new plant was not completed although the primary tank thereof was in operation; that during the time he was in charge of this work the sewage disposal plant of Bethany had a capacity for a town of about 2,000 population and that the population of Bethany was in excess of 4,500 at that time; that the old plant had a capacity of about fifty

per cent; that the sewage was treated for only about one-half the proper time; that sewage was by-passed and discharged into the stream which flowed into plaintiff's lake during a part of the time the new primary tank was being built; Robert Lawrence, biologist, testified that he had been at the plant when the State Health Department made various tests between September 23, 1947, and September 23, 1949; that he did not see the plaintiff's lake during that time; that he made various tests at the request of defendant to determine the count of oxygen in the effluent from the Bethany plant during this period but made no tests to determine the nitrates, phosphates, or other substances in the effluent; C. E. Clifford, City Chemist of Oklahoma City, testified that if sewage were properly treated or stabilized it would not give off an odor but if unstabilized it would give off an odor; that his expert opinion was that if at the time the plant was in operation it had a capacity of 6,400 gallons, that a capacity of 10,000 gallons was necessary and the plant was only 64 per cent adequate to handle the load, it was self-evident that sewage would by-pass and would be the reason for building a new plant.

It is true that two of the exhibits, supra, were held incompetent and prejudicial in Noble v. City of Bethany, supra, but it should be noted in passing that those exhibits were offered in the Noble case for the sole purpose of showing the facts therein stated and they were not offered for the purpose of showing notice and it was not contended on that appeal that the admission of the instruments was harmless.

The essential points necessary to sustain plaintiff's cause of action stand uncontradicted. The uncontroverted evidence of plaintiff shows that the disposal plant discharged its effluent into the stream which flowed into plaintiff's lake; that it discharged improperly treated sewage into this stream; that the disposal plant was inadequate to take care of the load; that sewage overflowed and by-passed into the stream and thence to plaintiff's lake; that plaintiff's lake was thereby polluted; that as a result there was an offensive odor from the lake and an overproduction of algae causing the death of all fish and all other forms of marine life in the lake; that the City of Bethany had notice of this condition; that plaintiff suffered damage thereby. Practically all of this testimony was corroborated by defendant's evidence outlined above.

■■■ Conceding for the sake of argument only that the exhibits were incompetent and that it was therefore error to receive them in evidence, error which does not appear to be prejudicial is not reversible error. In Gilliland v. Snedden, 195 Okl. 601, 159 P.2d 734, 735, we said:

"The defendant contends that it was error to admit in evidence a carbon copy of a letter ʹwritten by George William Snedden to the defendant, wherein the amount due was stated and a note was enclosed to be executed by defendant for the amount sued for, together with a detailed statement of the account. Assuming without deciding that such evidence is incompetent, we cannot say that it was reversible error, for the reason that other evidence including the testimony of an accountant was introduced to show the account was the same as shown in the letter and the enclosed detailed statement, and such evidence was not prejudicial to defendant. Incompetent evidence, to secure reversal, must affirmatively appear to have caused prejudice to objecting party. Cole v. Ramsey, 124 Okl. 235, 254 P. 962."

See also National Surety Corp. v. Smock, 204 Okl. 265, 228 P.2d 659; Dippel v. Hargrave, 206 Okl. 26, 240 P.2d 1070, 1071. All the material facts stated in those instruments which might have been prejudicial to the rights of defendant if the instruments were incompetent were proven by the witnesses of the City of Bethany. The facts stated in the exhibits are cumulative and therefore harmless.

Instructions Nos. 9 and 10, the giving of which defendant assigns as error, taken

together informed the jury of the bases upon which the plaintiff could recover. The defendant at the trial, and here, objected to the giving of said instructions for the sole reason that, as contended by it, there was no proof of contamination and therefore no right of recovery on any cause of action. It therefore cites cases on the inapplicability of abstract statements of law in an instruction to a jury. The plaintiff in this case sued for $37,425, as the reasonable cost of the removal of the silt. However the engineer who testified for the plaintiff in estimating the yardage constituting the silt deposit testified that it was necessary to remove 36,307 cubic yards of silt at a reasonable cost of $49,014.45. The jury returned a verdict on this item for $28,150.

A nuisance abatable by the expenditure of money and labor is a temporary nuisance, Ponca Refining Company v. Smith, 73 Okl. 6, 174 P. 268, and damages suffered therefrom are limited to the two years next preceding the filing of the suit, 12 O.S.1951 § 95, if the statute of limitations, as here, was plead. The statute does not begin to run until the damage from the maintenance of such a nuisance is or should have been discovered. St. Louis & San Francisco Ry. Co. v. Ramsey, 37 Okl. 448, 449, 132 P. 478. Mr. Green, who was living on the property and in close proximity to the lake, testified that he noticed some dead fish in April, 1947, and for that reason undertook to determine the cause therefor; after that his investigation disclosed that untreated sewage was by-passing from the defendants' disposal plant into the lake; that in the meantime he took 38 samples of the silt at various times during 1947 and 1948; that these samples were tested by a laboratory. This information he verbally, along with others, communicated to the Town of Bethany and implored it to build a new plant at a different place away from the water-shed of plaintiff's lake and several other lakes down stream; that he got the Fish and Game Department to restock plaintiff's lake in the fall of 1947; no more fish died until the spring of 1948 which date is within the limitation period; that as a part of his investigation of the cause of the death of the fish he had a chemist take samples of the water in the lake. The chemist testified that he took numerous samples of the water in 1947, 1948 and 1949, before and after the beginning of the running of the period of limitation, which he analyzed and found contaminated to such extent that the water in the lake was unfit for any use. A biologist-botanist testified that after September, 1947, based upon the analysis of the water taken from the lake, his observation of the lake, and his training and experience, the pollution in the lake was so great as to cause an over-production of algae, which in turn killed all other kinds of marine plants, all of which sank to the bottom of the lake causing pollution of silt, discoloration of the water and stench. He described the manner in which such a condition killed fish as hereinbefore set forth. Common knowledge teaches that the silt in the lake would become saturated with the water it was suspended in. If the water is polluted or contaminated the silt will be contaminated when it falls to rest at the bottom of the lake. This reasonable inference was no doubt indulged by the jury or else it would not have determined that it was necessary to remove all the silt in order to rid the lake of contamination, though Tom Green who qualified as an engineer and expert on sewage and the contaminating effect thereof, testified that it was necessary to remove the silt to rid the lake of pollution. There is nothing in the record to show why the jury assessed approximately $20,000 less damage for this item than alleged and proven, which stood uncontradicted, unless it was because there is no specific testimony as to the amount of silt in the lake at the time of the beginning of the period of limitations.

Under its answer the defendant defended this case on the theory that it did not pollute the lake of plaintiffs; that the nuisance, if it ever existed, had been abated by the building of an extension to its old sewage disposal plant more than two years before the suit was filed. Its twelve assignments of error are in accordance with its motion for new trial. Its first four assignments of error and its 6th, 7th, 10th

and 11th assignments go entirely to the alleged insufficiency of evidence. Its 5th assignment alleges error of the court in admitting the letter communications from the Department of Health. Its 8th assignment, which asserts error of the court in giving instruction No. 5 to the jury with reference to notice is not argued. Its 9th specification concerns instruction No. 8 which is not mentioned in its brief. Assignment 12 alleges error in the refusal of the trial judge to give its requested instruction No. 2 which it does not mention in its brief. Assignments 8, 9 and 12 are waived. Assignment No. 5 is treated in this opinion. The other assignments, all of which relate to insufficiency of testimony of the plaintiff, have been treated. Its argument going to the insufficiency of the testimony to show pollution and contamination of the silt in the lake is untenable as hereinbefore demonstrated and its argument in connection therewith that the defendant would only be liable for the expense of removal of the silt which came into the lake within the statutory period of two years next preceding the filing of the suit is also untenable. In this connection it should be pointed out that defendant tacitly concedes that it would be liable for the removal of all polluted silt whether it came into the lake before or after the beginning of the running of the statute, if shown that its removal was necessary to abate the nuisance. In its reply brief defendant says:

"Defendant has no quarrel with the measure of damages set forth in the brief of plaintiff. Our position is that the evidence was insufficient to make a case for the plaintiff and the question of the measure of damages is immaterial to the appeal."

It proceeded to trial on two defenses: denial of pollution and abatement of the nuisance over two years before suit was brought. The testimony on the latter point is at least in conflict, though no testimony by the defendant to the effect that the plant was completed before the two-year period began to run is pointed to in the record. Under a correct instruction of the court the jury's determination settles that question.

A litigant will not be permitted on appeal to present his case on a different theory than that on which he tried the suit. In the trial of the case the defendant did not take the position it was only liable for the removal of silt contaminated by it within two years next preceding the filing of the suit.

Affirmed.

CORN, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH and DAVISON, JJ., dissent.

BLACKBIRD, Justice (specially concurring).

I cannot agree with the majority opinion wherein it holds that plaintiff's Exhibits 10 to 15, inclusive, were admissible under Tit. 12 O.S.1951 §§ 486 and 502. These documents no doubt furnish some evidence of negligence of the defendant. Even so, there was other evidence of negligence on the part of the City sufficient to justify a verdict. An examination of the evidence as to the damages shown plaintiff suffered was far greater than the amount determined by the jury. To say that these documents influenced the jury would only be a wild conjecture. I concur specially.

HALLEY, Chief Justice (dissenting).

There is no question but that plaintiff's exhibits 10 to 15 were not admissible in evidence under sections 486 and 502 of Title 12 O.S.1951. We have heretofore condemned the admission of two of the same exhibits in Noble v. City of Bethany, 206 Okl. 122, 241 P.2d 401. The exhibits offered in this case were letters from third parties or inter-office communications. The defendant at no time had an opportunity to cross-examine the authors of those instruments. Highly prejudicial statements were contained in some of the exhibits. It is urged that they were admissible to show notice on the part of the defendant but the trial court made no attempt in his instructions to limit their efficacy to notice only.

To say that the admission of these exhibits is harmless is pure conjecture. Here

an over-sized farm pond was polluted for two years and the jury allowed damages to the extent of $30,650. Such an amount is so flagrantly excessive that undoubtedly passion and prejudice moved the jury and who are we to say that these documents, erroneously admitted, were not responsible for the size of the verdict.

I dissent.