## TOWN OF SENTINEL v. RILEY.

No. 25187. April 16, 1935.

George E. Merritt and Meacham, Meacham, & Meacham, for plaintiff in error.

Carder & Carder, for defendant in error.

PER CURIAM. The defendant in error, as plaintiff, brought this action against the plaintiff in error, as defendant, in the district court of Washita county, to recover judgment for damages arising out of the defendant's septic tank or disposal plant, and thereafter recovered judgment for $1,100 damages, from which judgment the defendant appeals. The parties will be referred to as they appeared in the trial court, plaintiff and defendant.

The plaintiff in his petition against defendant filed April 29, 1932, alleged in substance that he owned a tract of about 24 acres of land contiguous to the town of Sentinel, Okla., which was described in his petition; that defendant owned and operated a sewage disposal system, a part of which was a reservoir or septic tank, constructed about 1924 or 1925, within an approximate distance of 200 yards of the dwelling house of the plaintiff; that said septic tank was near the banks of a certain creek known as "Dry Elk creek", which creek proceeded in a southerly direction across the premises of the plaintiff; that said septic tank was erected for the purpose of receiving all of the waste, refuse, and sewage from said town, the defendant; that by use of proper equipment and by proper operation of the same the waste and sewage received by said tank could be successfully purified so that no noxious or uncomfortable odors would emanate from said tank or the creek into which the flow from said tank is turned; that it was the duty of said defendant to so construct and operate said sewage disposal system as to prevent the escape of poisonous, noxious odors and substances, but in violation of said duty the defendant had maintained unsuitable facilities for proper treatment and disposal of said sewage and negligently and wrongfully maintained its said sewage disposal system in such a manner as to allow the escape of noxious and poisonous odors and smells from said tank and into said creek, and thence on and across the premises of the plaintiff in such a manner that the plaintiff suffered temporary and permanent injury to his personal and property rights. He further alleged the defendant negligently permitted to escape and overflow into said creek and onto the premises of the plaintiff raw and un-

digested sewage to such extent as to pollute and render unfit for any purpose the water in said creek; that said water is valuable to plaintiff for watering stock; that the deposit of said sewage and undigested waste matter had totally destroyed all the under surface water by permeating the same with foul and obnoxious smells, odors, and stinks, to such an extent that it was injurious to health, comfort, and repose of the plaintiff and his family; that the rental value of his lands had greatly depreciated, and plaintiff suffered permanent damages in the depreciation of the value of the real estate because of the nuisance created by such negligent and wrongful operation of said disposal system in sum of $4,750 for which he prayed judgment.

The defendant answered, admitting the location of plaintiff's home, next a general denial, and then alleged the disposal plant in question was constructed in the protection of the health of the community and in the exercise of police control and a governmental function; that the cause of action, if it ever existed, was barred by the statute of limitations; that plaintiff encouraged and permitted the construction of said plant, stood by and allowed the plaintiff to operate the same for six or seven years without objection or complaint. To this answer the plaintiff made reply of general denial. During the trial plaintiff abandoned his claim for permanent damages. Thereafter the cause was tried to a jury, a verdict rendered for plaintiff for $1,100, and judgment entered May 10, 1933. A motion for new trial was filed, overruled, and defendant appeals to this court.

Plaintiff's evidence showed he had owned the tract of land about twelve years, had lived upon the same with his family as his home and residence for two years before filing this action; that defendant had a septic tank that emptied into Dry Elk creek about 124 yards from his house; that during this two-year period the pipe carrying the sewage from the town to the tank was broken for a period of four to six months, and raw and undigested sewage collected and washed down the creek upon and across his land; that the odor was so bad during the two-year period that at night and other occasions his family had to close all the windows and doors and burn paper in the house; that finally company would not visit in his home because of the offensive odor; at times his family could hardly eat a meal in the house and finally he moved away. Other witnesses supported the story of the plaintiff about the odor and smell from the

tank, about the break and the refuse flowing out into the creek. A copy of certain reports was offered in evidence covering an examination and test made in State Health Laboratory, Department of Public Health, state of Oklahoma, of specimens of water taken from the creek above and below the tank and from wells located in the vicinity, to show the water in creek and the subsurface water from the wells to be polluted, odoriferous, and containing gas.

The evidence of the defendant showed a smell sometimes came from the tank; that about April, 1932, there was a break in the line carrying the sewage to the tank at the creek bank where the line crossed the creek, and the break was fixed immediately after; that there were two slaughter houses, a cotton gin and a colored settlement in the vicinity of the tank and plaintiff's home. .

1. Defendant claims error in admission over its objection of copies of certain records of State Sanitary Engineer in State Health Laboratory of Department of Public Health, state of Oklahoma, contending the original documents or records in the office of the State Sanitary Engineer would not be admissible in evidence for the reason the law does not require a record or report to be filed or made covering water examinations. The evidence was a written report or finding of the State Sanitary Engineer, showing his report after analysis of the specimens of water taken from the creek and the wells in the vicinity of the tank.

Section 4443, O. S. 1931, provides the State Board of Health shall be in charge of a State Commissioner of Health to be appointed by the Governor, who shall supervise all matters relating to public health, shall have a seal of office and power to administer oaths to any person in the discharge of his duty. Section 4445, O. S. 1931, authorized State Commissioner of Health to make and enforce rules and regulations for the prevention, cure, preventing the spread of diseases, and cause to be removed any substance that may endanger the health of persons or domestic animals. Section 4446, O. S. 1931, makes it the duty of the State Board of Health to prevent the spread of disease, to abate a nuisance calculated to injure the health of any community, make sanitary investigations, to advise the state and all local governments in hygienic matters, to act with cities, towns and their boards of health, and to make a report in writing to the Governor 20 days before any regular or special session of the Legislature upon the sanitary conditions, prospect and

needs of the state, and such other matters as the board may consider proper for the promotion of health among the people; which report shall be laid before the Legislature by the Governor. Section 4447, O. S. 1931, provides the Board of Health shall maintain a chemical and bacteriological laboratory for examination of public water supplies; such examination shall also cover sewerage, purification work, and diseases. The laboratory shall be maintained in office of the State Commissioner of Health under the control and supervision of Board of Health, and such rules and regulations may be adopted as required. Under these statutes the Board of Health maintains the chemical and bacteriological laboratory for the examination of public water supply, together with sewage conditions, makes and keeps reports and records on file in' its office, to the end that living conditions of the people may be protected and improved. The board makes rules and regulations authorized by law to cover the operations of its department. The office could hardly function and make reports to the Governor for the Legislature without keeping records of its examinations, reports, and proceedings. We think the written reports on file with the State Board of Health covering water examinations of the vicinity concerned, are records in a public office, used for public business and could properly be offered in evidence. Originals were offered or exhibited and withdrawn and copies furnished in their place for the record.

In Village of Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306, the Supreme Court of the United States had before it the question of whether or not a record kept by United States Signal Service should be admitted in evidence over an objection that there was no law authorizing such records to be kept, and because it was not competent testimony. The court said:

"Under these acts a system has been established and records are kept at the stations designated, of which Chicago is one. Extreme accuracy in all such observations and in recording 'them is demanded by the rules of the Signal Service and it is indispensable, by order that they may answer the purposes for which they are required. They are, as we have seen, of a public character, kept for public purposes, and so immediately before the eyes of the community that inaccuracies, if they should exist, could hardly escape exposure. They come, therefore, within the rule which admits in evidence 'official registers or records kept by persons in public office in which they are required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties or under their personal observation.' Taylor, Ev., sec. 1429; 1 Greenl. Ev., sec. 483. To entitle them to admission it is not necessary that a statute requires them to be kept. It is sufficient that they are kept in the discharge of a public duty. 1. Greenl. Ev., sec. 496. Nor need they be kept by a public officer himself, if the entries are made under his direction by a person authorized by him. Galt v. Galloway, 4 Pet. 332. It is hardly necessary to refer to judicial decisions illustrating the rule. They are numerous. A few may be mentioned. De Armond v. Neasmith, 32 Mich. 231; Gurney v. Howe, 9 Gray, 404; The Catharine Maria, L. R. 1 Adm. & Eccl., 53; Cliquot's Champagne, 3 Wall. 114, 18 L. Ed. 116. We think, therefore, that there was no error in admitting the records kept by the person employed for the purpose by the United States Signal Service."

2. Defendant next contends the trial court erred in denying it the right to cross-examine the Assistant State Sanitary Engineer, called as witness by plaintiff to identify the reports from the office of the State Health Laboratory, Department of Public Health. The witness was offered to identify as exhibits the written reports and copies thereof from the office of State Health Laboratory, the 'reports being made under the direction of the State Sanitary Engineer, a part of that office, and the cross-examination should have been limited to what the witness testified to in chief. We think the rule has been properly stated in Hand v. Hickok, 98 Okla. 125, 224 P. 505, as follows:

"We think the matters under consideration and the cross-examination of the witnesses which the defendant complains of in his brief were all competent and material for the purpose of disposing of all facts and circumstances surrounding the purported settlement. 'The cross-examination of a witness should be confined to matters concerning which the witness has been examined in chief, but he may be asked any question which reasonably tends to explain, contradict, or discredit his testimony.' Woods v. Faurot, 14 Okla. 171, 77 P. 346. To the same effect see Weleetka Light & Water Co. v. Burleson, 42 Okla. 748, 142 P. 1029; Farmers' Product & Supply Co. v. Bond, 61 Okla. 244, 161 P. 181. We think the cross-examination of defendant's witnesses as disclosed by the record comes within the rule above stated."

Cross-examination is a valuable and substantial right to litigants, but experience has established rules for the better administration of justice and these rules provide

cross-examination is proper only as to matters brought out on direct examination, together with any question which reasonably tends to explain, contradict or discredit such testimony. We think the cross-examination was properly refused.

3. Defendant further complains that the trial court erroneously allowed the witness, Earl Benedict, to testify as an expert when he did not show himself qualified, and when he based his testimony upon a hypothesis not proved. This witness was offered as an expert in water examinations to interpret the written reports of the State Sanitary Engineer which had been offered in evidence by the plaintiff, and this we think the most serious question in the case. The written reports in the forms submitted and not explained or interpreted would mean little to the jury. This witness was offered to show what the figures and terms used in the report meant and the processes by which the water was examined in arriving at the results shown in the report. The qualification of expert witnesses is generally within the sound discretion of the trial court, and in passing on the qualifications of an expert witness, the action of the trial court will not be disturbed on appeal in the absence of abuse of discretion. Toombs v. Cummings et al., 151 Okla. 166, 3 P. (2d) 177. The witness showed he had taken a short course at Agricultural and Mechanical College of Oklahoma, and for nearly three years had been water chemist of the city of Hobart, and during all that time was working under and with the State Board of Health in making analyses of water and other sanitary matters. The trial court heard the testimony and believed from the education and experience of the witness that he was qualified to give the evidence offered. It was not a contest relating to a degree of knowledge or experience, but the question was whether or not this witness was sufficiently well informed to properly and intelligently explain the findings and reports of the State Sanitary Engineer. The writer hereof feels the plaintiff might properly have taken the deposition of the officials in charge of the office of the Board of Health or State Health Laboratory at Oklahoma City, and in that way secured the testimony of the officer who examined the specimens of water, who made such reports and what the reports meant when interpreted. This might have been proper or a better way to have secured the evidence, but the plaintiff did not choose to do this, and we are unwilling to say that the method followed by the plaintiff is sufficient to cause a reversal of the judgment.

4. Defendant next contends that instruction No. 4, given to the jury over its objection, did not properly state the law applicable to the evidence. The instruction reads:

"You are further instructed that evidence has been admitted in this case of the existence of a slaughter house in the near vicinity of the plaintiff's home and evidence tending to show that noxious odors emanated therefrom, but in this connection you are instructed that if you find that the plaintiff has sustained damage, and that the same occurred both from the concurring negligence of the defendant in the operation of its septic tank and the operation of the slaughter house, but which two causes are the efficient causes of the damages sustained by the plaintiff, if you so find, then all of the persons whose acts contribute to such damage are liable therefor, and the plaintiff may elect to sue either or both, and that the negligence of one furnishes no excuse for the negligence of the other, or no ground for reduction in the amount recoverable for the damage sustained."

There were two slaughter houses and a cotton gin near the septic tank and the home of the plaintiff. The evidence leaves the impression that some of the odors and smells may have come from these sources. Counsel failed to cite any authorities showing the error alleged in the instruction. After a careful examination of the instruction in the light of the decisions, we feel that the instruction fairly states the law. The instruction states that if the jury finds the plaintiff sustained damage and the same occurred both from the concurring negligence of the defendant in the operation of its septic tank and the operation of a slaughter house, but which two causes are the efficient causes of the damage sustained, then the defendant would be liable to the plaintiff. This merely restates the rule that where two joint tort-feasors create a damage, the party injured can elect to claim from either of the tort-feasors. This rule is too old to be set aside now. In City of Skiatook v. Carrol, 163 Okla. 149, 21 P. (2d) 498, the court said:

"We find no error in the refusal to give the instruction requested. There are a number of reasons why the instruction should not have been given, among which is the rule as to concurrent causes. That rule is stated in 45 Corpus Juris, 476, as follows: 'If the concurrent negligence of two or more persons combined together re-

sults in an injury to a third person, they are jointly and severally liable and the injured person may recover from either or all; the concurring negligence of one is no excuse or defense to another; each is liable for the whole; even though another was equally culpable, or contributed in a greater degree to the injury; no consideration is to be given to the comparative degree of negligence or culpability, or the degree of care owing; and further inquiry as to proximate cause is not pertinent. * * *' The Oklahoma decisions cited thereunder are as follows: Avery v. Wallace, 98 Okla. 155, 224 P. 515; Jueschke v. Seeley, 98 Okla. 133, 224 P. 341; Selby Oil, etc., Co. v. Rogers, 94 Okla. 269, 221 P. 1012; Walters v. Prairie Oil, etc., Co. 85 Okla. 77, 204 P. 906, and Northup v. Eakes, 72 Okla. 66, 178 P. 266. In Pratt v. Chicago, etc., R. Co., 107 Iowa, 287, 77 N. W. 1064, 1066, it was stated as follows: 'The rule of law is well settled that the mere fact that some other cause operates with the negligence of the defendant to produce the injury does not absolve defendant from liability. His original wrong, concurring with some other cause, and both operating approximately at the same time in producing the injury, makes him liable, whether the other cause was one for which the defendant was responsible or not'."

After a careful examination and consideration of the record of the trial in the court below, together with the briefs filed here, we are led to the conclusion that there is no error in this record so prejudicial to the rights of the defendant as to require or justify a reversal of the judgment of the trial court.

The judgment of the district court is affirmed.

The Supreme Court acknowledges the aid of Attorneys William B. Moore, Thomas W. Leahy, and J. H. Kennedy in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Moore and approved by Mr. Leahy and Mr. Kennedy, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.