KEY et ux. v. BRITISH AMERICAN OIL PRODUCING CO.

No. 31721. Sept. 25, 1945.

Rehearing Denied April 9, 1946.

*167 P. 2d 657.*

Cantrell, Carey & McCloud, of Oklahoma City, for plaintiffs in error.

Richardson, Shartel, Cochran & Pruet, of Oklahoma City, for defendant in error.

DAVISON, J., This cause is presented on appeal from the district court of Oklahoma county, wherein W. S. Key and Irene D. Key, husband and wife, failed to recover judgment against the British American Oil Producing Company, a corporation, for damages to their home alleged to have been caused by the company's operation and maintenance of an oil well in close proximity to their property.

The cause was tried to a jury in the trial court, which jury returned a verdict in favor of the defendant. The plaintiffs have appealed. They appear before this court as plaintiffs in error. The order of appearance is thus preserved and our continued reference to the parties will be by their trial court designation.

It is first urged by the plaintiffs that in the trial of this cause there was "judicial misconduct indicating bias and prejudice of the trial judge (which) prevented plaintiffs from having a fair trial."

In reply to which the defendant asserts that "plaintiffs were accorded a fair trial by the trial judge."

Plaintiffs first call our attention to

an incident connected with the impaneling of the jury. Counsel for plaintiffs examined one juror at length and then excused the juror by using a peremptory challenge, whereupon the court said: "Why did you take up all of that time asking those questions? You knew you were going to excuse him. I would have done so."

We are unable to find anything in the foregoing remark of the court which indicated or intimated his conclusions as to the merits of the case or which indicated an unwarranted bias or prejudice toward counsel for the plaintiffs.

Thereafter and during an intermission the trial court said to one of the other counsel for the plaintiffs: "We are going to have to hold Mr. Carey down or he will run away with this courthouse." This remark was made during an intermission and while the jury was absent from the courtroom. Insofar as the remark may be said to indicate or intimate the conclusion of the trial court on the merits of the controversy, it is without color or meaning. We do not think it constituted error, and so hold.

Counsel for the plaintiffs next call our attention to an admonition by the trial court requesting counsel for the plaintiffs to stop asking leading questions. The following controversy occurred between court and counsel:

"Q. I have a home, Mr. Smiser, and I can tell you if I had a well that close to my home . . . (interrupted) The Court: Just a minute, I will have to swear you. Mr. Carey: I have to defend myself with the witness. The Court: I don't think so."

There is nothing in the foregoing remarks of the court which indicates the court's conclusion with reference to the merits of the controversy. Nor do we deem the remarks unduly critical of counsel.

The plaintiffs direct our attention to the following incident as reflected by the record:

"A. I knew the values of property in Lincoln Terrace Addition. Mr. Carey: That is right. The Court: Gentlemen of the jury, disregard the remark of counsel, please. Q. So you did today testify as to the fair market value of the improvements of this property of General Key as of March 28, 1940, when you had never been inside of it at that time. Mr. Carey: We object to that as argumentative and unfair. The Court: Wait a minute. Overruled. Mr. Cantrell: Will you hear from me? The Court: Yes, sir. Mr. Cantrell: Counsel knows that the answer this witness gave you was in response to a hypothetical question in which the facts previously testified to were assumed, and this is a deliberate attempt in my judgment to mislead the witness in the jury's mind in making a statement which he didn't ever make. The Court: Overruled and exception."

Similar occurrences happened twelve other times during the trial of the cause. We have examined the record of each of these occasions but fail to find any place where the trial court expressed or intimated an opinion as to the merits of the lawsuit or was unduly critical of counsel for the plaintiffs.

Thereafter and during the argument of the cause to the jury counsel for the plaintiffs was reprimanded. The record reflects the following incident:

"I say he said, gentlemen of the jury, that no repairing would do any good if the operations continued, so we have got a permanent damage and we are going to have a damage that is greater than we have been able to prove today because some of the damage hasn't occurred. Mr. Pruet: We object to that. That is not what Stokes testified and not the law. The Court: That will be sustained. That is not the measure of damages, Mr. Carey; that is contrary to the instructions. Mr. Carey: May I say, I am saying that the proof is it will cause damage in the future. The Court: That is not the instructions in the case; not the issues in the case. Mr. Carey: Very well. I thought I had a right to argue that, and my understanding of the law is —. The Court: You heard me. I said that is not the issue in this case. Mr. Cantrell: Will Your Honor

excuse the jury, please? The Court: Your time is about up. Mr. Carey: I would like to finish my argument. Mr. Cantrell: Go ahead and finish it. The Court: Your time was up about a minute ago. I was letting you go because you didn't seem to finish. How much more time do you want? . . . The Court: All right, gentlemen of the jury, retire to consider your verdict, please. ( Jury out.) Mr. Cantrell: Your Honor, please, I want to make a record on what happened just now. I think Your Honor was wrong. I say that respectfully, but I want this record to show that near the conclusion of the argument of counsel for the plaintiff, that because of what happened the court pounded the desk and exhibited a very great deal of impatience for counsel for the plaintiff. May I say further, in justification that I think Your Honor is entirely wrong in your ruling that counsel is not permitted under a claim for permanent damages, to argue that the damages will be continued."

And again:

"Mr. Cantrell: Your Honor had a perfect right to make the ruling. The Court: I had to make the ruling twice. The first time I suggested to him. Mr. Cantrell: Counsel had a right to continue to express his own thoughts. The Court: Counsel did not have a right to pursue it. Mr. Cantrell: He didn't think them to be entirely divergent from Your Honor's ruling because it has been our view that recovery of permanent damages or any discussion of what constitutes permanent damages, the damages already sustained, the present damages now and future damages are involved and I can show Your Honor plenty of cases. The Court: That is not the damage in this case."

And later:

"Mr. Carey: I think you committed reversible error in making the statement you did and pounding on the desk. The Court: That is baloney and you know it. Mr. Cantrell: I don't agree with the court on that either."

In Empire Oil & Refining Co. v. Fields, 188 Okla. 666, 112 P. 2d 395, this court said in paragraph 1 of the syllabus:

"A trial judge should refrain from any comments during the conduct of a trial in the presence of the jury as to the merits of the case or the truth or falsity of the testimony, and he should refrain from making any unnecessary remarks or admonitions to counsel which may tend to a result prejudicial to a litigant or influence the minds of the jury on the merits of the action, but he may use such measures as may be necessary to maintain the dignity of the court and rebuke the impropriety or misconduct of counsel and no comment or remark of the judge will be ground for reversal where the substantial rights of plaintiff in error have not been violated."

In the body of the opinion we said:

" 'Where counsel engaged in the trial of an action is guilty of impropriety or misconduct, a proper admonition, censure or rebuke by the presiding judge, in the presence and hearing of the jury, is ordinarily not prejudicial, where not couched in intemperate language, although it is ordinarily preferable that any rebuke be administered in the jury's absence. The judge is justified in using to counsel language sufficiently pointed and emphatic to put an end to objectionable conduct, and some warmth or asperity in interchanges between counsel and the court will not give ground for complaint, particularly in a hotly contested case.' 64 C. J. 92, para. 93.

" 'Improprieties or irregularities in the conduct of a judge are fatal, however, only where there is such departure from proper and orderly method of disposing of the action that the substantial rights of a party are materially affected. The manner of emphasis or force of expression of a judge that cannot be reasonably interpreted to express a wrong opinion as to the law or facts, or to express an opinion of a fact which should be left wholly to the jury, cannot be assigned as error, so mere decisiveness or abruptness of manner is not necessarily objectionable, nor is impatience, discourtesy, or bad manners, provided the essentials of sound judicial conduct are not violated, and complaint cannot ordinarily be made of the tone of voice used by the judge, unless some actual error is committed.' 64 C. J. 102, para. 107." ..

We have carefully examined the rec-

ord before us in the light of the law as stated, but fail to find any conduct on the part of the trial judge which would constitute reversible error. We therefore conclude and hold that the conduct of the trial judge was free from substantial error.

Plaintiffs in error next complain that the trial court admitted incompetent, irrelevant, immaterial, and prejudicial evidence over the objections of plaintiffs. Under this assignment plaintiffs assert that the "fact that plaintiffs had joined in so-called 'lease' to parties other than defendant (even though thereafter assigned to defendant) under which plaintiff drew certain bonus and royalty from oil produced by Parkway Wells constituted absolutely no defense to plaintiffs' action, nor any offset, mitigation or reduction for substantial physical damage caused plaintiffs' property by operation of defendant's Johnson Subdivision No. 1 Well, which was not drilled or operated pursuant to lease from plaintiffs and in which they had no interest, and trial court committed prejudicial and reversible error in permitting defendant to make such proof."

The Parkway Wells were drilled under a lease between the State of Oklahoma, as lessor, and the Sunray Oil Company, as lessee. An agreement was made whereby property owners in Lincoln Terrace Addition, including plaintiffs herein, participated in the bonus and royalties. The leases were subsequently assigned to defendant.

Plaintiffs further assert that:

"The trial court committed prejudicial and reversible error in permitting defendant's counsel, over plaintiffs' objections and as a part of the cross-examination of one of the plaintiffs (General Key) called as a witness for plaintiffs, to elicit evidence concerning said 'lease' and bonus and royalty payments because it was improper cross-examination in that (1) the inquiry was beyond the scope of the direct examination; and (2) defendant was thereby permitted to introduce its affirmative defense as a part of plaintiff's case, when same was in no wise touched

upon or gone into on the direct examination of the witness."

And plaintiffs also assert that there was:

"Error of the trial court in improperly admitting improper evidence, over the objections of opposing counsel, as to so-called 'lease' and bonus and royalty payments received thereunder by plaintiffs from Parkway Wells was not cured by written instruction of trial court to jury at close of case that same was no defense to plaintiff's action, because such evidence was so prejudicial, deadly, and impressive that its harmful effect to plaintiffs' case could not be removed from the minds of the jury by any such instruction."

In response to the above and foregoing points the defendant says that:

"The court committed no prejudicial or reversible error in the admission of testimony."

In the case of Conner et ux. v. Anderson-Kerr Drilling Co., 190 Okla. 13, 123 P. 2d 279, this court was confronted with a question similar to that outlined by plaintiffs in their first contention. Our answer to the question appeared in paragraph 1 of the syllabus, wherein we said:

"In an action for damages to real estate, where plaintiffs contended that the drilling of a well for oil and gas near their home caused a reduction in the value of their property, it was not error for the trial court to permit defendants to introduce evidence that plaintiffs had leased the lot on which their residence was located for oil and gas, and sold the mineral rights in such lot, and the consideration received therefor, on the theory that the reduction in value of plaintiffs' property was due to the sale of the mineral rights rather than to the well drilled by defendants."

Under our decision in Conner et ux. v. Anderson-Kerr Drilling Co., supra, we are of the opinion, and hold, that the trial court did not err in admitting evidence connected with the agreement associated with the Parkway Wells.

Complaint is then made that the evi-

dence with reference to the Parkway Wells was brought out on cross-examination of General Key, a witness for plaintiffs, and that such production of evidence was irregular and improper.

In Town of Sentinel v. Riley, 171. Okla. 533, 43 P. 2d 742, this court said:

"These rules provide cross-examination is proper only as to matters brought out on direct examination together with any question which reasonably tends to explain, contradict or discredit such testimony."

And in Town of Sentinel v. Boggs, 177 Okla. 623, 61 P. 2d 654, we said in the syllabus:

"While the scope of cross-examination rests largely within the discretion of the trial court, it should be confined to the matters covered on direct examination, and inquiry as to the credibility of the witness and his evidence."

We are of the opinion, and hold, that the cross-examination of General Key in the particular indicated was within the scope of legitimate examination.

In instructing the jury the trial court advised that:

"Evidence has been introduced in this case showing that plaintiffs have executed an agreement, sometimes referred to herein as an oil and gas lease, with the Sunray Oil Company covering the property of plaintiffs, which was thereafter assigned by the Sunray Oil Company, in whole or in part, to defendant, whereby plaintiffs were permitted to share in oil produced from wells other than defendant's Johnson Subdivision No. 1 well. In this regard, you are instructed that the mere execution of this instrument and the receipt of royalty and bonus benefits thereunder by plaintiffs constitutes no defense to an actual, substantial, physical damage, if any you find, from a preponderance of the evidence, caused by the acts of defendant in operating its Johnson Subdivision No. 1 well, which well was not drilled or operated pursuant to any lease from plaintiffs and in which plaintiffs have no interest, and in no wise bars or precludes plaintiffs from recovering for all damages,

if any, caused by the acts of the defendant in the operation and conduct of said well, under the lease as set out in these instructions."

In view of the fact that the evidence complained of was admissible and in view of the limitation upon the effect thereof, as contained in the instruction of the trial court, we are of the opinion, and hold, that no error was committed in connection with the admission of evidence.

Plaintiffs also assert that "the trial court committed prejudicial error in refusing to give the jury plaintiffs' requested instruction No. 7 C, which read as follows:

"The court has determined that, as a matter of law, the letter of March 8, 1937, whereby plaintiffs agreed to make no protest to the drilling of Johnson Subdivision No. 1 well by defendant, constitutes no defense whatsoever to the action of the plaintiffs, nor is it in any wise a waiver or bar to the absolute right of plaintiffs, under the law, to recover for an actual, substantial, physical damage, if any you find, caused by the operations conducted by defendant at said well. The jury is, therefore, instructed to entirely disregard the introduction of said letter into evidence and to withdraw same from its consideration as if it had never been offered and introduced in evidence."

It is a well-established rule in this court that when the general instructions given by the court sufficiently cover the issues of a case, it is not error to refuse a special instruction. City of Chickasha v. Daniels, 123 Okla. 73, 251 P. 978; Oklahoma City—Ada—Atoka Ry. Co. v. Riddle, 183 Okla. 318, 82 P. 2d 304; Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 236; Oppenheim v. Barnes, 193 Okla. 236, 144 P. 2d 446; Standard Theatres Corp. v. Hughes, 185 Okla. 377, 91 P. 2d 1058.

Our examination of the instructions given discloses that the issue presented under requested instruction No. 7 C was adequately covered by the instructions given by the trial court. The re-

fusal of the trial court to give instruction No. 7 C was and is free from substantial error.

Plaintiffs next assert that:

"The trial court committed prejudicial error in refusing to instruct the jury concerning legal effect of plat restrictions of Lincoln Terrace Addition as stipulated to by respective counsel as requested by written requested instruction of plaintiffs."

Plaintiffs' written requested instruction No. 5 read:

"You are instructed that it has been stipulated and agreed, and it is the law, that by reason of certain plat restrictions covering Lincoln Terrace Addition, in which the property of plaintiffs is located, which plat restrictions were in full force and effect when the Johnson Subdivision No. 1 Well of defendant, located to the rear of plaintiffs' property, was drilled, and during its entire operation, no oil well could be located or drilled on the property of plaintiffs or on any property in said addition."

The effect of the plat restrictions of Lincoln Terrace Addition was not a vital or material issue in this action. The defendant was not claiming or asserting a right to drill or operate a well within Lincoln Terrace Addition, and the well in question was not drilled in such addition. It is not error to refuse an instruction on an immaterial issue or one not vital in an action.

In 5 C.J.S. 1158, sec. 1774b, it is said:

"Appellant cannot complain of the refusal of instructions where no prejudice resulted from such refusal . . . or where the instruction was unnecessary or related to an immaterial issue. . . ."

See, also, St. Louis-San Francisco Ry. Co. v. Teel, 82 Okla. 31, 198 P. 78.

In view of the immaterial nature of the issue with which the instruction dealt and in view of the instructions given by the trial court which properly covered the issues in the case, we conclude, and hold, that the trial court's refusal to give plaintiffs' requested instruction No. 5 was free from reversible error.

Plaintiffs next assert that: "The trial court committed prejudicial error in refusing to give to the jury plaintiffs' requested instruction No. 4."

Plaintiffs requested instruction No. 4 read as follows:

"In this case, gentlemen of the jury, it has been requested that the jury be permitted to view the property involved in this action. It is the opinion of the court that such a view by the jury should not be permitted in this case and you will, therefore, disregard the fact that any request has been made that the jury view such premises."

On the instruction requested the trial court indorsed: "No formal request made."

The record reflects that in his opening statement counsel for defendant stated that he was going to ask that the jury be permitted to view the premises. However, he did not thereafter and during the trial of the cause make any such request. The instruction as drafted was incorrect. It assumed that a request for the jury to view the premises had been made. The instruction as drafted could not have been properly given.

In Colonna v. Eiseman Mfg. Co., 98 Okla. 107, 224 P. 181, we said in the third paragraph of the syllabus:

"It is not error to refuse to give a requested instruction which cannot be given without correction or modification."

See, also, Shell Petroleum Corp. v. Wood, 168 Okla. 271, 32 P. 2d 879.

Plaintiffs also assert that:

"The verdict of the jury and judgment of the trial court thereon against plaintiffs on each cause of action are not reasonably sustained by the evidence, are contrary to the overwhelming weight thereof, and contrary to applicable law and the result of bias, passion and prejudice."

The difficulty with this assignment of error by the plaintiffs is that they did not demur to defendant's evidence nor did they move for a directed verdict. Such failure on their part renders it impossible for them to attack the sufficiency of the evidence. Grayson v. Brown, 166 Okla. 43, 26 P. 2d 204; Opperud v. Twedell, 175 Okla. 191, 51 P. 2d 799; Town of Sentinel v. Boggs, supra.

Notwithstanding the failure of the plaintiffs to perfect their record on this point, we have examined the evidence and hold the same to be sufficient.

The proceedings before the trial court are free from substantial or reversible error, and the judgment of that court is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, and WELCH, JJ., concur.