NOBLE et al. v. CITY OF BETHANY.

No. 34421.    Nov. 13, 1951.

Rehearing Denied March 4, 1952.

*241 P. 2d 401.*

Wallace & Harkey, Oklahoma City, for plaintiffs in error.

C. C. Andrews and Priest & Belisle, Oklahoma City, for defendant in error.

HALLEY, V. C. J.  The parties will be referred to as they appeared in the lower court. The plaintiffs alleged, and it was admitted, that they were the

owners of certain lands located in sec. 4, twp 12 N., range 4 W., Oklahoma county, Oklahoma, and that they had owned the property since 1925; that in August, 1925, a dam was constructed on a stream of water that crossed said land, creating a lake of approximately eight acres. The lake was stocked with fish, and plaintiffs and their families and friends used it for fishing and recreational purposes for a number of years. That the defendant constructed a sewage disposal plant at 50th and College streets, just north of the corporate limits of the defendant city, approximately two years after plaintiffs acquired the property. It was further alleged that the sewage disposal plant was at the head of the stream of water, or natural water course, flowing across the land belonging to plaintiffs, and that the effluence of the sewage disposal plant was discharged into the water course or stream which flowed across the land and into the lake belonging to plaintiffs; that the amount of sewage flowing through the disposal plant was greatly in excess of the capacity of the plant, and that by reason thereof there was discharged into the water raw and untreated sewage, and that the water in the lake belonging to plaintiffs was polluted, thereby destroying the lake for any useful purpose, and that same created a nuisance; that the fish in the lake died, and that it was no longer of any value as a fishing stream and lake and useless for any purpose whatever; and that the officials of the defendant city knew of this condition and failed to take measures to improve it; and that for two years prior to the time of filing of the action, plaintiffs had been so damaged.

The defendant claimed that it was in no way responsible for the condition alleged.

The case was tried to a jury, and a verdict was rendered in favor of the plaintiffs for $7,500. On the motion for a new trial, the trial court granted a new trial for the specific reason, as he stated, that he had committed error in admitting in evidence plaintiffs' Ex-hibits "A" and "B", and that his sole reason for granting a new trial was that Exhibits "A" and "B" were not admissible, and that his action in permitting those exhibits to be admitted in evidence was error, and that he considered it sufficient error that a new trial should be had.

The sole question in this case is whether or not it was error to admit exhibits "A" and "B" for the plaintiffs.

Plaintiffs' Exhibit "A" was a letter written by J. P. Hutchinson to H. J. Darcey under date of April 16, 1947. It was an inter-office memorandum sent to the Chief Engineer of the Bureau of Sanitary Engineering by J. P. Hutchinson, Chief Chemist, both of the State Department of Health. But it is not competent for the reason that it is not the type of official document that is contemplated by the statute as being admissible in evidence, as it is not required or authorized to be filed in any public office. We are of the opinion that Exhibit "B," which was a letter written by Henry J. Darcey, Chief Engineer, to E. C. Hall, mayor of the defendant city, on March 5, 1946, for E. F. Matthews, M. D., the Commissioner of Health, who is the head of the State Department of Health, is inadmissible. This letter was written in regard to the Bethany sewer system, and is as follows:

"State Department of Health
"State of Oklahoma
"3400 North Eastern
"Oklahoma City, Oklahoma
"March 5, 1946

"Bethany Sewer System
"Mr. E. C. Hall, Mayor
"Bethany, Oklahoma.

"Dear Sir:

"We have learned that a project providing for the construction of a sewer extension to serve Cockrell Addition of Bethany, Oklahoma, is under consideration by the city officials. The need for this sewer line is not questioned, for at the present time some of the property is being served by individual septic tanks, which have proved to be unsatisfactory, particularly in wet weather.

"Before this project is officially submitted to this office for approval as required by law, I think it is only right that the city officials be informed of the position the Health Department will have to take in view of the past history of the Bethany sewer system and sewage disposal plant. In checking back through our files to 1941, I find that numerous written complaints have been received from property owners, below the outfall sewer, and there have been many verbal complaints that I know of.

"Representatives of the Department have made repeated inspections of the plant and the stream below the plant, and reports on the findings together with our recommendations should be on file in the city office.

"If you will review this file, you will find that we have repeatedly called attention to the need for improving the plant in order to produce an effluent which will not cause complaint.

"During the past few years, the population of Bethany has increased, with a corresponding increase in sewage flow. Yet it has been possible to discourage the filing of damage suits, in order to permit the city officials the opportunity to carry out our recommendations for the improvement of the sewage plant. Considering these facts, it would not be reasonable for the Department to approve extensions to the sewer system, which would increase the load on the plant and aggravate conditions in the stream below the plant. Therefore, it is our hope that immediate consideration will be given the proposition providing for an adequate sewage disposal plant. As soon as definite assurance can be given that the plant improvement will be made, then sewer extension projects will be welcomed by this Department.

"Very truly yours,
"G. F. Mathews, M. D.,
"Commissioner of Health,
"By H. J. Darcey, Chief Engineer, Director, Bureau of Sanitary Engineering."

This letter is not such an official document as is contemplated by our statute as being admissible. See Title 12, §§486 and 502, O.S. 1941. In our opinion, this letter was not admissible under Kansas City Life Insurance Co. v. Meador, 186 Okla. 397, 98 P. 2d 20. This was not a report that had to be kept in the office of the State Department of Health, as in Town of Sentinel v. Riley, 171 Okla. 533, 43 P. 2d 742. The letter itself shows that it was based on hearsay, and our decision in Hadley v. Ross, 195 Okla. 89, 154 P. 2d 939, makes it inadmissible. We find no provision in the statutes requiring or authorizing the filing of this letter.

The trial court came to the conclusion that both Exhibits A and B were incompetent and that their admission had prejudiced the jury against the defendant. This was tantamount to a determination that the defendant had not had a fair trial. Under such circumstances, it was the trial court's duty to grant a new trial in the proper exercise of judicial discretion.

Affirmed.

WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.

GIBSON, J. (dissenting). I cannot concur in the majority opinion.

Judgment was entered on a jury's verdict. Defendant's motion for new trial was granted, the trial court assigning as his reasons therefor that he had committed error in admitting Exhibits A and B.

The question of this error is all that is now before this court. In Browne v. Bassett, 191 Okla. 22, 126 P. 2d 705, we said:

"It is the duty of the trial court upon request of a litigant to state its reasons for sustaining a motion for new trial, and on appeal from an order granting a new trial this court will confine its review to the reasons so assigned by the court."

I believe that Exhibits A and B were records within the purview of 12 O. S. 1941 §486, in that they were such records as were required by law to be made or kept by the State Board of Health. I further believe that the majority opinion is in conflict with our

opinion in Town of Sentinel v. Riley, 171 Okla. 533, 43 P. 2d 742, and I do not believe that this court intends to strike down the holding or discard the reasoning of that case.

Exhibit A was an inter-office communication made to the Chief Engineer of the Bureau of Sanitary Engineering, who was the same officer to whom the questioned instrument was sent in the Town of Sentinel case. It was made by the duly authorized State Chemist in performance of his official duties, just as in the Town of Sentinel case.

Therein we held:

"Reports of the analysis of water made and kept in office of State Board of Health, State of Oklahoma, may be admitted in evidence as coming within the rule admitting official registers or records kept by persons in public office in which they are required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties or under their personal observation."

In the Town of Sentinel case we outlined in some detail the powers and statutory duties of the State Board of Health and we held that the reports on file covering water examinations of the vicinity concerned are records kept in a public office, used for public business and that they could properly be admitted in evidence. The same reasons exist as to Exhibit A as existed for sustaining admissibility of the report in the above mentioned case.

The opinion in the instant case holds that Exhibit B is not admissible under Kansas City Life Ins. Co. v. Meador, 186 Okla. 397, 98 P. 2d 20, wherein the Insurance Commissioner issued a certificate reciting that he had investigated a certain policy and could find no such rider as plaintiff therein contended for, and attached numerous letters and stated his conclusions that there was no such rider. It was merely a communication to a member of the public. This court held that the certificate involved in that case was not admissible under section 486 or any other section.

But Kansas City Life Ins. Co. v. Meador, supra, is distinguishable from this case. As held by this court, the questioned certificate was not such a report as is required to be kept in the office of the Insurance Commissioner of Oklahoma, and hence was not a public record. But in case at bar, 63 O. S. 1941 §619 required the State Board of Health to investigate and report upon all matters relating to water supplies and sewerage and pollution of the waters of the state and to make such recommendations in relation thereto as it may deem wise and proper. And under section 614 of the Act, if the Board shall find that any of the waters of the state have been polluted it has authority to make an order requiring such pollution to cease or make such disposition of the sewerage as in its judgment may be necessary to prevent further pollution.

Exhibit B is more than a letter. It is a report and recommendation by this state agency as to what is necessary to be done in the way of improvement of the sewerage plant. If we look at its substance and not its form, it is a recommendation or order authorized by section 614. Under the Act this agency of the state had authority and it was its official duty to make its investigation and to make its findings and recommendations or orders set forth in both Exhibits A and B.

Since the Board has authority to make its investigation, surely its findings and orders are necessarily to be kept by it. 63 O. S. 1941 §4 defines the duties of the State Board of Health. Among its duties the Board is required to make sanitary investigations and inquiries relative to disease; to advise the state and all local governments in all hygienic matters and to make a report to the Governor twenty days prior to each regular and special session of the Legislature upon the sanitary condition, prospect and needs of the state, and it is required that the Governor lay the report before the Legislature at its next ensuing term.

It is contemplated that the records of such investigations of sanitary conditions shall be kept, otherwise no report of intelligence or value could be prepared for future reference to the Governor, or Legislature, as required. Town of Sentinel v. Riley, supra. In that case we observed that "The office (Board of Health) could hardly function and make reports to the Governor for the Legislature without keeping records of its examinations, reports, and proceedings."

Objection is made that Exhibit B is based on hearsay. An examination of the instrument establishes that it is based on the files of the Board itself and the reports of its representatives. It also reveals that such reports, findings and resultant recommendations by the Department were furnished to the City of Bethany. As a result of the facts recited the city was directed to provide an adequate sewerage disposal plant. Although couched in polite language it nevertheless amounted to a recommendation or order such as the Board of Health was authorized to make under the statute. 63 O. S. 1941 §614.

Exhibits A and B were properly admitted under authority of 12 O. S. 1941 §§486 and 502, which provide:

"Sec. 486. Copies of all papers authorized or required by law to be filed or recorded in any public office, or of any record required by law to be made or kept in any such office, duly certified by the officer having the legal custody of such paper or record, under his official seal, if he have one, may be received in evidence with the same effect as the original when such original is not in the possession or under the control of the party desiring to use the same."

"Sec. 502. The books and records required by law to be kept by any county judge, county clerk, county treasurer, register of deeds, clerk of the district court, justice of the peace, police judge or other public officers, may be received in evidence in any court; and when any such record is of a paper, document, or instrument authorized to be recorded, and the original thereof is not in the possession or under the control of the party desiring to use the same, such record shall have the same effect as the original; but no public officer herein named or other custodian of public records, shall be compelled to attend any court, officer or tribunal sitting more than one mile from his office with any record or records belonging to his office or in his custody as such officer."

The exhibits were competent under the pleadings in this case. In plaintiffs' first amended petition it was alleged:

" . . . That, although, the sewage system installed by the defendant may have been adequate to meet all requirements at the time the same was installed, it has long since ceased to meet said requirements and plaintiffs further allege that for more than five years prior to the filing of this action, the defendant has had notice of the inadequacy of the sewage disposal plant, but have failed, refused and neglected to execute such measures as were necessary to remove the nuisance."

Issue was joined and, under this allegation, the exhibits were competent to show that defendant had notice of the conditions created and existing by its operation of the sewerage disposal plant. Advice from the State Board, having authority to investigate and having made the investigation, was competent to show that defendant had knowledge of the condition complained of by plaintiffs.

The majority opinion bases is rejection of Exhibit B on our decision in Hadley v. Ross, 195 Okla. 89, 154 P. 2d 939. I do not believe that the opinion just cited is in conflict with my views above expressed. Judgment in the last mentioned case was reversed because a report of a highway patrolman on a motor vehicle accident was admitted in evidence, in a damage suit, over objections. It was conceded that the officer was not present at the time of the accident, and we held his entire report was hearsay and based on information conveyed to him after the

accident had occurred. We held that if the officer who made the report had been present at the time of the trial he could not have testified to the matters contained in the report because he had no personal knowledge thereof. In the case before us Exhibit B is based on the matters and things contained in the official files of the state office that had jurisdiction to act in the issuance of the recommendation or order designated as Exhibit B.

In Hadley v. Ross, supra, we said:

"Ordinarily public officials whose duty it is to keep records for the public good make up such records from day to day and they disclose occurrences as they actually happen, and the public official, or some of his deputies, have or had personal knowledge of the facts recorded. In this manner events known by public officials to have transpired are preserved by recordation. Obviously it would be extremely difficult, if not impossible, to bring to court as witnesses all those public officials or deputies who have personal knowledge of the relevant and material facts sought to be proved by records kept by them. The exception to the hearsay rule in this regard is justified because of convenience and necessity, in view of the fact that it is well recognized that officials perform their duties under oath without prejudice and bias, impelled only by official responsibility and duty. It must also be presumed that their duties are performed efficiently and accurately; their records are therefore considered trustworthy. The exception, however, does not make admissible evidence shown by public records that would not be competent if those who made the records, and who had personal knowledge of the facts disclosed thereby, were present and testifying."

In my opinion, the State Health Commissioner, if present, could have testified from his records to all things contained in Exhibit B. He could have testified that his department had made an inspection of the sewerage disposal plant as it was authorized to do under 63 O. S. 1941 §§614 and 619; that an analysis of the water had been made or attempted as authorized by section 7 and under authority of Town of Sentinel v. Riley, supra; and that he had submitted reports to the city together with his recommendations as authorized by section 614. All these matters were reflected by the files of this administrative board. The report, Exhibit B, was not hearsay. It was factual as to what the official files reflected and it was such a report and recommendation as he was authorized by statute to make. Exhibit B was not at all similar to the report of the patrolman in the case of Hadley v. Ross, supra.

The rule governing the admissibility of these exhibits, in my opinion, is correctly stated in 20 Am. Jur., "Evidence", §1023, as follows:

"It is a well-recognized general rule that official records and written reports of a public nature which public officers are required, either by statute or by the nature of the duties of their office, to keep of transactions occurring in the course of their public service, made either by the officers themselves or under their supervision, are ordinarily admissible in evidence as proof of the facts recorded therein, so far as they are relevant and material to the particular inquiry, although the entries have not been testified to by the persons who actually made them and although they have, therefore, not been offered for cross-examination."

In my opinion, the trial court erred in granting a new trial for the reasons assigned by that court.

For the foregoing reasons, I respectfully dissent.