R. G. ALDRIDGE, d/b/a Aldridge Contractors, Plaintiff in Error,

v.

K. J. BURCHFIEL, d/b/a Burchfiel Steel Erection, Defendant in Error.

No. 41481.

Supreme Court of Oklahoma.

Oct. 11, 1966.

Rehearing Denied Dec. 27, 1966.

657

Kenneth W. Lackey, Eufaula, for plaintiff in error.

Stipe, Gossett & Stipe, McAlester, for defendant in error.

PER CURIAM:

Plaintiff in error will be referred to herein as "defendant" and the defendant in error as "plaintiff" as they appeared in the trial court. Defendant is a bridge erection contractor. Some time prior to April 12, 1963, he entered into a contract with the proper governmental agency to erect certain bridges and overpasses in Pittsburg County, Oklahoma, as a part of the Eufaula Reservoir project, including a bridge described as the Gaines Creek Bridge which is the subject of the present litigation. On April 12, 1963, the defendant entered into a subcontract with plaintiff to transport from the railroad and erect the structural steel on the Gaines Creek Bridge at an agreed price of $33.50 per ton, or a total contract price of $6,365.00.

Plaintiff seeks recovery for the balance due on his contract plus certain amounts for extra expense and work not included in the contract. The total amount of his demand is $9,843.74.

The jury returned a verdict in favor of the plaintiff for $9,000.00. Defendant appeals from the overruling of his motion for new trial.

The principal controversy herein involves the claim of the plaintiff for extra expense and work not included in the contract.

The evidence is undisputed that soon after the erection of the steel was commenced, difficulties were encountered. The holes in the ends of the steel girders could not be fitted with the bolt heads on shoes or plates fastened to the piers on the bridge.

Plaintiff offered evidence that piers were improperly graded by the defendant causing the girders to be out of line, making it impossible to fit the holes in the girders with the bolt heads.

Defendant admits that it was their duty to properly erect and grade the piers of the bridge so that the holes in the girders would fit the bolts in the shoes or plates installed by the defendant on top of the piers.

Many methods were employed in an effort to complete the erection of the bridge. After two or three weeks of attempting to secure a proper grade, plaintiff was advised by the engineer for the defendant to put the steel in place and weld it together. Defendant intended to attempt to secure the approval of this work by the U. S. Engineers. A U. S. Engineer inspected the completed portion of the bridge, and rejected it. He testified that the steel "moved like a bunch of wet noodles hanging up there"; that "the difficulty was due evidently to failure of the piers to be at the right elevation". After the steel erected was rejected by the U. S. Engineer, it was necessary to cut the welds with an acetylene torch, and continue attempting to properly assemble the steel.

The U. S. Engineer testified that if defendant had made the grades and elevation properly, the steel could have been erected in three or four days, but, because of the difficulties encountered, plaintiff was required to work on the project approximately a month before it was completed.

The extra work performed by the plaintiff included welding, steel cutting, moving and removing steel structure, hauling steel, filing, and many miscellaneous tasks.

Plaintiff's foreman and superintendent in charge of the steel erection project testified that the defendant agreed to pay for the extra work performed. Defendant's superintendent admitted that the extra work was necessary, and that plaintiff performed it, but denied that defendant agreed to pay for the extra services. He also denied that the difficulties encountered were caused by the failure of defendants to grade the piers properly, contending that the difficulties were caused by the steel manufacturer in fabricating and processing the steel.

The assistant engineer for Hayden Steel Company, who furnished the steel, testified that it was all fabricated according to approved detailed plans.

These contested questions of fact were submitted to the jury under proper instructions. The verdict of the jury in favor of the plaintiff is sustained by the evidence.

Defendant first contends that the trial court erred in overruling his motion to make more definite and certain, and then permitting the plaintiff to establish his case by the testimony of his agent, Russell Roberts. It is his contention that this amounted to a fatal variance. Plaintiff alleged in his petition that:

"3. Shortly after entering into the contract with said defendant, the plaintiff commenced erecting the steel on the Gaines Creek project as provided in said contract, but after he had proceeded to get the steel in place and attached to the piers of said bridge, it was learned that said defendant had made several errors

in setting the grade on the piers and that it was necessary that plaintiff perform considerable extra work which was not covered in the written contract, before plaintiff could proceed to properly erect the steel. Plaintiff and defendant then conferred about the matter and defendant agreed to pay plaintiff for all the extra work."

The pertinent portions of the motion to make more definite and certain filed by the defendant are as follows:

"Comes now the defendant, and respectfully requests that this plaintiff be required to make his petition more definite and certain in that said plaintiff should be required to state that the allegations contained in paragraph three (3), as amended, wherein it refers to "defendant" that this reference is to R. G. Aldridge, personally, and not to any agent, supervisor, superintendent or employee of said R. G. Aldridge. That if the plaintiff intends to prove that any of the statements, agreements, requests, directions, or contracts, were made by any person other than R. G. Aldridge, personally, that said plaintiff be required to state who such agents, supervisors, employees or superintendents were.

"That the plaintiff be required to make his petition more definite and certain in that if the plaintiff expects to prove that any of the acts alleged to have been performed by any agents, servant or employee of the plaintiff, that the plaintiff be required to state the name and identity of such agent, servant or employee."

The trial court overruled the motion. Defendant contends that upon the overruling of the motion the issues to be presented should have been limited to dealings between the plaintiff and the defendant personally and that admission of the testimony of Russell Roberts, superintendent and agent of the plaintiff, constituted a variance from the issues presented by the pleadings.

At the trial Roberts, over the objections of defendant, testified that Melvin McDon-

659

ald, defendant's superintendent, agreed that defendant would pay for the extra work.

■ In Brazelton's Wholesale Cleaners & Dyers v. Cash, 182 Okl. 493, 78 P.2d 810, this court said:

"A motion to make more definite and certain is addressed largely to the discretion of the court; and its ruling thereon will not be reversed, except for the abuse of such discretion that results prejudicially to the complaining party. And where the facts sought by such motion are within the knowledge and possession of the movant, it is not error to overrule the same."

Rule No. 5, Appendix to Chapter, Tit. 12 O.S.1961, p. 777, relating to pre-trials in the District Courts requires a party litigant to furnish the opposing party at the pretrial hearing with the names, addresses, and identity of the witnesses he intends to call and testify at the trial of the case. Since the early case of In Re Abbott, 7 Okl. 78, 54 P. 319, it has been common practice in this state for litigants to take the deposition of the adverse party. The defendant did not avail himself of either of the above procedures for the purpose of securing the names of witnesses plaintiff intended to use in establishing his case.

■ This court has held in several cases that no variance between the allegations in the pleadings, and the proof, is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action, or defense, upon the merits. Yellow Cab Company v. Allen, Okl., 377 P.2d 220; Liberty Plan Co. v. Francis T. Smith Lumber Co., Okl., 360 P. 2d 500; United Home Protective Corp. v. Reed, 173 Okl. 610, 49 P.2d 212; McMullen v. Holcombe, 125 Okl. 178, 256 P.2d 888.

The trial proceedings clearly established that the defendant was not misled to his prejudice by the failure of plaintiff to allege that the oral agreement whereby defendant became obligated to pay for the extra work was the result of dealings between Russell Roberts, agent for plaintiff, and Melvin McDowell, agent for defendant.

■ McDowell, as agent for defendant, executed the original contract with plaintiff to erect the steel. He was defendant's superintendent and was in complete charge of the project. The defendant could have secured all the information necessary for defending the case by interviewing his own superintendent, McDowell. McDowell was present at the trial. He denied committing defendant to paying for the extra work. Defendant was not prevented from maintaining his defense. His defense would have been the same had he known Russell Roberts would testify to the making of the agreement. Defendant was not taken by surprise or misled. His rights were not prejudiced. There is no merit to defendant's contention.

■ Plaintiff contends the trial court erred in admitting in evidence plaintiff's Exhibit 10. Exhibit 10 is a statement of account described very aptly by the defendant in his brief as "an itemized claim compiled for the purpose of billing Mr. Aldridge". The exhibit recites in detail the various charges claimed by plaintiff for extra work furnished defendant. The items contained in the exhibit were explained in the oral testimony of plaintiff's estimator, and other witnesses during the trial. The exhibit was attached to plaintiff's petition at the time the suit was filed. The defendant therefore was afforded an opportunity to examine and check the accuracy of the items in the exhibit at any time he desired to do so for a period of many months prior to the trial. He evidently took advantage of this opportunity, as his attorney during the trial, spent many hours carefully examining the witnesses for plaintiff on each item. In Hooven v. First Nat'l Bank of Ardmore, 134 Okl. 217, 273 P. 257, 66 A.L.R. 1203, this court said:

"This is not a question of admitting a copy in lieu of an original, but one of admission of consolidated statements cover-

ing a multitude of transactions, the original records of which were available to the adverse party. It is obvious that cases may arise, and do arise, where it is impossible, physically, to introduce in evidence voluminous records involved. In many cases it is cumbersome and tends to smother justice in her own robes."

In the cited case, we quoted with approval from Jordan v. Warner's Estate, 107 Wis. 539, 83 N.W. 946, as follows:

"Where the matters in issue, involving mathematical calculations, are provable by numerous entries in various official records, it is proper, where the records themselves are before the court, to permit a witness who has examined them to introduce, in connection with his testimony, written statements and computations summarizing the result of his researches."

See also Suttle v. Chadwell, 196 Okl. 298, 164 P.2d 880; Bell v. Tackett, 134 Okl. 164, 272 P. 461; Pierce Petroleum Corp. v. Osage Coal Co., 133 Okl. 130, 271 P. 675. No error was committed in the admission of plaintiff's Exhibit 10.

Defendant contends that the trial judge was guilty of misconduct so as to indicate an interest in the case and to discredit the defense in prejudice to defendant's rights.

The trial of this case was spirited, with some apparent friction between counsel for the parties. The attorneys persisted in asking leading questions after being admonished to refrain from doing so by the court. In several instances, witnesses were examined on re-direct three different times and cross-examined a similar number of times. This practice resulted in the propounding of many repetitious questions.

The transcript of the evidence is almost 300 pages in length. We have studied the entire record. It reflects that at all times the trial court made an honest and sincere effort to expedite the trial.

At times it was necessary for the court to admonish, or reprimand, but the record does not indicate favoritism for either side or that the substantial rights of the defendant were prejudiced. In Key v. British American Oil Producing Co., 196 Okl. 663, 167 P.2d 657 we quoted paragraph one of the syllabus in Empire Oil & Refining Co. v. Fields, 188 Okl. 666, 112 P.2d 395, app. dism., 62 S.Ct. 79, 314 U.S. 572, 86 L.Ed. 463, which in applicable part, is as follows:

"A trial judge * * * should refrain from making any unnecessary remarks or admonitions to counsel which may tend to a result prejudicial to a litigant or influence the minds of the jury on the merits of the action, but he may use such measures as may be necessary to maintain the dignity of the court and rebuke the impropriety or misconduct of counsel, and no comment or remark of the judge will be ground for reversal where the substantial rights of plaintiff in error have not been violated."

In Central Fire Ins. Co. of Baltimore v. Smith, 188 Okl. 203, 107 P.2d 361, this court said:

"* * * it is understandable how in such case a judge will sometimes become irritated and permit his irritation to become manifest; and while a judge should be careful to control his actions in this respect yet not every such act will constitute reversible error."

See also Love v. Reynolds, 36 Okl. 297, 128 P. 242. There was no misconduct of the trial court justifying a reversal of this case.

Lastly, defendant contends that the verdict is excessive. The verdict is for $9000. A qualified witness for the plaintiff testified positively that the amount due the plaintiff after proper deductions was $9,611.68. The reasonableness of the charges claimed by the plaintiff was established by competent evidence. Defend-

.ant offered contradictory evidence. This ·contested question of fact was presented ·to the jury which decided plaintiff was entitled to recover $9000. The verdict in the .amount of $9000 is sustained by competent ·evidence and is not excessive.

In Yellow Cab Co. v. Allen, Okl., 377 P.2d :220, this court said:

"In an action of legal cognizance the verdict of the jury will not be disturbed on appeal when evidence is in conflict if there is any competent evidence reasonably tending to support the verdict."

Among the numerous cases to the same effect are: A. A. Murphy, Inc. v. Banfield, Okl., 363 P.2d 942; Bankers Service Life Ins. Co. v. Ritchie, Okl., 351 P.2d 1045; Boorigie Bros. v. Quinn-Barry Tea & Coffee Co., 73 Okl. 296, 176 P. 391; Rice v. Woolery, 38 Okl. 199, 132 P. 817.

The judgment of the trial court is affirmed.